Zachary Nightingale (California Bar # 184501)
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| S.Y., Z.D., Y.W., H.G., W.X., | Case No. 5:25-cv-03244 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE DECLARATORY JUDGMENT ACT** |
| v. | |
| Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security; | Request for Declaratory and Injunctive Relief |
| Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; | |
| Moises BECERRA, in his official capacity, Acting Field Office Director of San Francisco Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security; and | |
| Donald J. TRUMP, in his official capacity, President of the United States of America; | |
| Defendants. | |

**INTRODUCTION**

1.  Plaintiffs S.Y., Z.D., Y.W., H.G., and W.X. are all individuals in lawful F-1 visa status who are maintaining their status by being either current students *or* employed pursuant to post-graduate Optional Practical Training ("OPT") employment authorization. They are several of hundreds, if not more, F-1 students nationwide whose SEVIS record has been abruptly and unlawfully terminated by the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE") since approximately April 4, 2025, in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis.

2.  The Student and Exchange Visitor Information Systems ("SEVIS") is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor students' statuses. Within a short time period from April 4 to April 8, 2025, SEVP terminated each Plaintiff's SEVIS record and marked each Plaintiff as "Otherwise Failing to Maintain Status – Individual identified in criminal records check and/or has had their visa revoked," with no citation to any provision of law that indicates a basis for not maintaining status, or other facts that indicate a lack of status, or an actual violation of their status. Here, all Plaintiffs have had some form of law enforcement contact in the United States—but none of them have any criminal history that violates the terms of their F-1 status or otherwise renders them deportable.

3.  In the course of this widespread termination of SEVIS records, many of the hundreds of students have also been notified by the U.S. Department of State ("DOS") that their visas have been revoked.[1] Three of the Plaintiffs here have also received notification, from DOS, that their visas have been revoked as a prudential matter, and the others have no way to verify whether or not DOS has revoked their visa without DOS informing them. In practical terms, however, whether or not Plaintiffs' visas have been revoked makes little difference here, because the visa only provides the ability to enter the country, while the existing F-1 visa status in the United

---

[1] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press (Apr. 4, 2025), https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a.

States can and does remain valid even if the visa itself is expired or revoked. As such, the visa revocation is not the subject of this litigation.

4.  There are two distinct but related problems with ICE's termination of Plaintiffs' SEVIS records. First, the grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiffs' SEVIS records, and neither do the underlying facts referred to by ICE as they do not amount to any violation of the students' lawful status. Second, ICE appears to be taking the position that the termination of an individual's SEVIS record effectively ends their F-1 visa status, which is not the case. Even when a visa is revoked, ICE is not authorized to terminate Plaintiffs' F-1 student statuses. Here, Plaintiffs have been in full compliance with the terms of their F-1 status and have not engaged in any conduct that would warrant termination of their status.

5.  Rather, ICE's policy of unlawfully terminating SEVIS records—whether in conjunction with F-1 visa revocations or not—appears to be designed to coerce students, including Plaintiffs, into abandoning their studies or post-graduate employment and choosing to voluntarily leave the country, despite not having violated their status. For example, on March 5, 2025, DOS informed a graduate student at Columbia University, Ranjani Srinivasan, that her F-1 student visa had been cancelled, with her SEVIS subsequently terminated.[2] On March 14, 2025, Secretary of Homeland Security Kristi Noem issued a post on X, accompanied by a video of Ranjani Srinivasan: "I'm glad to see one of the Columbia University terrorist sympathizers use the CBP Home app to self deport."[3]

6.  Other students who have had their F-1 visas revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visas had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals far from their homes, school, and communities, by physically moving them to detention centers in Texas and Louisiana once detained. There have been several high-profile cases of immigration

---

[2] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html.

[3] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488.

arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainees across state lines to detention facilities in Louisiana and Texas.[4] On information and belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved to the South the day before or day of their bond hearing in immigration court.

7.    If ICE believes a student is deportable for having violated their visa status, or any other reason, it has the authority to initiate removal proceedings and make its case in immigration court. ICE cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process. ICE similarly cannot engage in retaliatory arrests and transfers—without legal basis if the SEVIS termination was unlawful—to further intimidate students into abandoning their studies and fleeing the country to avoid arrest.

8.    Over the past two weeks, visa revocations and SEVIS terminations have shaken campuses across the country and California, including those in the University of California system and Stanford University.[5] The targeted SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students

---

[4] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); "What we know about the Tufts University PhD student detained by federal agents," CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportation-georgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

[5] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press (Apr. 4, 2025), https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Kaleem, Jaweed, *Trump administration cancels dozens of international student visas at University of California, Stanford*, Los Angeles Times (Apr. 5, 2025), https://www.latimes.com/california/story/2025-04-05/trump-administration-cancels-international-student-visas-university-of-california-stanford.

who are justifiably frightened about being arrested and shipped to an immigration jail far away from their communities.

9.  Plaintiffs do not challenge the revocation of their visas in this action. Rather, Plaintiffs bring this action under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act to challenge ICE's illegal termination of their SEVIS records.

## JURISDICTION

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b). An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief. *Id.* §§ 2201, 2202. The Court also has authority under the APA. 5 U.S.C. §§ 701–06.

11. Plaintiffs do not challenge underlying orders of removal or actions committed to unreviewable agency discretion. Plaintiffs are challenging Defendants' unlawful termination of their SEVIS, and seek to prevent any loss of visa status in the United States, as well as prevent their unlawful arrests as a result of that termination or alleged loss of status. Plaintiffs are not able to obtain review of their SEVIS revocations before an Immigration Judge. No other forum exists to address these claims.

12. Applying any statutory provision to curb jurisdiction in this case therefore would deprive Plaintiff of any effective judicial review of their claims and a "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe,* 486 U.S. 592, 603 (1988).

## VENUE

13. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e) because the Defendants are employees or officers of the United States, acting in their official capacity; because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California; because all Plaintiffs reside in this District; because all Plaintiffs, if detained by ICE, would fall within the jurisdiction of the ICE San Francisco Field Office, which is in the jurisdiction of the Northern District of California; and because there is no real property involved in this action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRADISTRICT ASSIGNMENT**

14. The assignment to the San Jose Division of this Court is proper under Local Rule 3.2(e) because all Plaintiffs reside in Santa Clara County.

**PARTIES**

**Plaintiffs:**

15. Plaintiff S.Y. is a current international student who attends school and resides in the Northern District of California. Plaintiff S.Y. seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting their rights through this lawsuit, and of harassment or blacklisting by third parties.

16. Plaintiff Z.D. is a former international student currently working pursuant to post-graduate employment authorization who works and resides in the Northern District of California. Plaintiff Z.D. seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting their rights through this lawsuit, and of harassment or blacklisting by third parties.

17. Plaintiff Y.W. is a current international student who attends school and resides in the Northern District of California. Plaintiff Y.W. seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting their rights through this lawsuit, and of harassment or blacklisting by third parties.

18. Plaintiff H.G. is a current international student who attends school and resides in the Northern District of California. Plaintiff H.G. seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting their rights through this lawsuit, and of harassment or blacklisting by third parties.

19. Plaintiff W.X. is a former international student currently working pursuant to post-graduate employment authorization who works and resides in the Northern District of California. Plaintiff W.X. seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting their rights through this lawsuit, and of harassment or blacklisting by third parties.[6]

---

[6] Plaintiffs separately file a motion to proceed pseudonymously.

**Defendants:**

20. Defendant Kristi NOEM is the Secretary of the DHS and is named in her official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. In her capacity as Secretary, Defendant Noem has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a).

21. Defendant Todd M. LYONS is the Acting Director of ICE and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens.

22. Defendant Moises BECERRA is the Acting Field Office Director of ICE, in San Francisco, California, and is named in his official capacity. ICE is the component of the DHS that is responsible for detaining and removing noncitizens according to immigration law and oversees custody determinations. In his official capacity, he is responsible for the enforcement of the immigration laws in San Francisco and surrounding counties, including against Plaintiff. ICE is responsible for the termination of Plaintiff's SEVIS record.

23. Defendant Donald J. TRUMP is named in his official capacity as the President of the United States of America. In this capacity, he is responsible for the policies and actions of the executive branch, including the U.S. Department of State and U.S. Department of Homeland Security.

## LEGAL BACKGROUND

24. A nonimmigrant visa provides a basis for a noncitizen's admissibility into the United States, but it does not control their continued lawful stay in the United States after they are admitted. Congress established a statutory basis for student visas under 8 U.S.C.§ 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Once a holder of an F-1 student visa is admitted in F-1 status, a student is granted permission to remain in the United States not for a fixed period time, as is the case for

other nonimmigrant visa holders, but rather for the duration of status (annotated as D/S), and that status endures (separate from the validity of the visa itself) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. The school at which the student studies issues a form I-20 to the student confirming their attendance and enrollment in the school, with an expected duration. Often the form I-20 is updated as the student's circular progress is updated, but in substance and duration. As long as there is a valid form I-20 issued to the student by the school, then the student is considered to be maintaining their lawful status.

25. Before 2001, there was no centralized databased to track student visa holders in the United States. After 2001, Congress created the SEVIS system to track the status of nonimmigrant visa holders admitted for "duration of status."[7] SEVIS is a centralized database maintained by the SEVP within ICE, and it is used to manage information on nonimmigrant students and exchange visitors and track their compliance with the terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials ("DSOs") must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations.[8] SEVIS termination can only be based on a student's failure to maintain status.[9]

26. DHS regulations distinguish between two separate ways a student may fail to maintain status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

27. The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§

---

[7]  USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001.
[8]  *See SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 6, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.
[9] *See id.*

214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

28. With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Arrests that do not result in any conviction, and minor infractions or misdemeanor offenses, do not meet this regulatory threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 427 (2021).

29. The second category, termination of status by ICE, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot otherwise unilaterally terminate nonimmigrant status.[10]

30. Accordingly, the existence of an arrest (or even minor conviction) does not constitute a basis for SEVIS termination. Likewise, the revocation of a *visa* does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter the country and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation *after* a student has already been admitted into the United States, because status is

---

[10] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

Complaint for Declaratory and
Injunctive Relief                    8                    Case No. 5:25-cv-03244

not terminated, and because the student is permitted to continue the authorized course of study.[11]

31. ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[12] Rather, if the visa is revoked, the student is permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[13]

32. While a visa revocation *can* be charged as a ground of deportability in removal proceedings before an immigration judge, such alleged deportability can be contested in such proceedings.[14] The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student is able to remain in valid status.[15] Only when a final removal order is entered would an individual's status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

33. A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter. *See* 8 C.F.R. § 214.1(d) (establishing the three limited circumstances under which DHS can terminate status). Moreover, there is no provision for termination of SEVIS based on law enforcement contact.

34. The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[16] Only the presence or absence of lawful status can be reviewed by the immigration judge. The termination of a SEVIS record therefore constitutes

---

[11] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf
[12] *Id.*
[13] Guidance Directive 2016-03, 9 FAM 403.11–3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.
[14] *See* 8 USC § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).
[15] 8 C.F.R. § 1003.18(d)(ii)(B).
[16] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).

final agency action for purposes of APA review.[17]

## **FACTUAL ALLEGATIONS**

### **Plaintiff S.Y.**

35. Plaintiff S.Y. is currently a graduate student in F-1 status in the Northern District of California. *See Declaration of Zachary Nightingale ("ZN Decl.")*.

36. Plaintiff S.Y. first came to study in the United States on a student visa in 2013 and completed an undergraduate degree. *ZN Decl.* at Exhibit ("Exh.") A (Visas of S.Y.).

37. In 2018, Plaintiff S.Y.'s F-1 visa was revoked by DOS due to a misdemeanor conviction they sustained for driving under the influence. *ZN Decl.* Their status was not terminated at that time. *Id.* Plaintiff S.Y. thereafter re-applied for a new F-1 visa at a U.S. consulate abroad, and submitted the requisite medical examination and relevant court documents. *Id.* In 2018, Plaintiff S.Y. was then issued a new F-1 visa, and they reentered the United States to continue their studies and complete their undergraduate degree. *ZN Decl.* at Exh. A (Visas of S.Y.).

38. In 2024, Plaintiff applied for and obtained another F-1 visa, again fully revealing the prior misdemeanor, and entered the United States to begin their graduate program. *Id.*

39. On or about April 8, 2025, Plaintiff S.Y. received notice from the university where they are currently a graduate student that their SEVIS status was terminated. *Id.* at Exh. B (SEVIS Revocation of S.Y.).

40. The only explanation was a code given for the termination which was "Otherwise Failing to Maintain Status." *Id.* The reason listed was that Plaintiff S.Y. had been identified in a criminal records check. *Id.*

41. Plaintiff S.Y. was informed that the school itself did not terminate their SEVIS status. *Id.*

42. Plaintiff S.Y. is unaware of the factual basis for the termination of their SEVIS status. *ZN Decl.*

43. Plaintiff S.Y. believes that the valid form I-20 issued by their school has not been terminated. *Id.*

44. On or about April 9, 2025, Plaintiff S.Y. also received notice from DOS that their F-1

---

[17] *See Fang*, 935 F.3d at 185.

visa had been revoked. *Id.* at Exh. C (Visa Revocation of S.Y.).

45. Plaintiff S.Y.'s only criminal history is the 2018 misdemeanor conviction for California Vehicle Code § 23152(b), for which they paid a fine and completed classes pursuant to the First Offender program. *Id.* at Exh. D (Court Documents of S.Y.). Plaintiff S.Y.'s minor misdemeanor conviction is not for a crime of violence, nor did it carry a potential sentence of more than one year. *Id.* This single conviction does not render Plaintiff S.Y. inadmissible to or deportable from the United States. *ZN Decl.* Importantly, long before the SEVIS termination on April 8, 2025, Plaintiff S.Y. had informed DOS of their criminal conviction. *Id.* at Exh. A (Visas of S.Y.). Subsequent to learning of Plaintiff S.Y.'s conviction, DOS reissued them another F-1 visa in 2018, and thereafter approved Plaintiff S.Y.'s current F-1 visa in 2024, and Plaintiff S.Y. was admitted into the United States, again with knowledge of that conviction, because their conviction does not render them ineligible for a visa nor inadmissible to, or deportable from, the United States. *Id.*

**Plaintiff Z.D.**

46. Plaintiff Z.D. is currently in valid F-1 status, and is employed pursuant to post-graduate OPT employment authorization, which is authorized through their F-1 student status, in the Northern District of California. *ZN Decl.* at Exh. E (Visas and Forms I-20 of Z.D.).

47. Plaintiff Z.D. first came to study in the United States on a student visa in 2021, and they received an undergraduate degree and eventually a graduate degree in 2024. *Id.* Since that time, Plaintiff Z.D. has lawfully worked in the United States pursuant to their F-1 OPT status and associated employment authorization. *Id.*

48. On or about April 4, 2025, Plaintiff Z.D. received notice from SEVP that their SEVIS status was terminated. *Id.* at Exh. F, (SEVIS Revocation of Z.D.).

49. The code given for the termination was "Otherwise Failing to Maintain Status." *Id.* The reason listed was that Plaintiff Z.D. had been identified in a criminal records check. *Id.*

50. On or about April 4, 2025, Plaintiff Z.D received an email from do-not-reply.SEVP@ice.dhs.gov stating that his OPT authorization period has ended. *Id.* at Exh. G (SEVP Email to Z.D.).

51. On or about April 6, 2025, Plaintiff Z.D. also received notice from DOS that their F-1 visa had been revoked. *Id.* at Exh. H (Visa Revocation of Z.D.).

52. Plaintiff Z.D. was not informed by their graduate university that the school itself terminated their SEVIS status. *Id.*

53. Plaintiff Z.D. is unaware of the factual basis for the termination of their SEVIS status. *ZN Decl.*

54. Plaintiff Z.D. believes that the valid form I-20 issued by their school has not been terminated. *Id.*

55. Plaintiff Z.D.'s only criminal history is a 2024 conviction for misdemeanor California Penal Code § 415 (disturbing the peace) for which they paid a fine. *Id.* at Exh. I, (Court Documents of Z.D.). Plaintiff Z.D.'s minor misdemeanor conviction is not for a crime of violence, nor did it carry a potential sentence of more than one year. *Id.* This single conviction does not render Plaintiff Z.D. inadmissible to or deportable from the United States. *Id.*

56. Plaintiff Z.D. is highly valued by their employer, which desires for them to continue to work at the company. *ZN Decl.* However, Plaintiff Z.D.'s ability to do so is in jeopardy due to the termination of their SEVIS record and status. *Id.*

**Plaintiff Y.W.**

57. Plaintiff Y.W. is currently an undergraduate student in F-1 status in the Northern District of California. *ZN Decl.*

58. Plaintiff Y.W. first came to study in the United States on a student visa in 2021. *ZN Decl.* at Exh. J, (Visas and Form I-20 of Y.W.).

59. Plaintiff Y.W. left the country and in 2022 attempted to return to the United States for the purpose of transiting though on their way to another destination. *ZN Decl.* However, their visa was not appropriate for that purpose, which was an oversight on their part. *Id.* As a result, Plaintiff Y.W. was then denied entry to the United States, and they were subjected to expedited removal and thus deported from the United States. *Id.*

60. Plaintiff Y.W. thereafter sought to return lawfully to continue their studies. *Id.* As part of their application for a new student visa, Plaintiff Y.W. applied for and received a waiver of their

inadmissibility (for the prior deportation) under INA § 212(d)(3). *Id.* at Exh. J, (Visas and Form I-20 of Y.W.) (noting the INA § 212(d)(3) waiver). With the waiver for that inadmissibility granted, they were again eligible to enter the United States lawfully. *Id.* They traveled to the United States on that new F-1 visa in 2024 to continue their undergraduate program. *ZN Decl.*

61. On or about April 4, 2025, Plaintiff Y.W. received a phone call from the international students' office from the university where they are currently an undergraduate student informing them that their SEVIS status was terminated. *ZN Decl.* They were not given a reason for the termination. *Id.*

62. Plaintiff Y.W. was informed that the school itself did not terminate their SEVIS status. *Id.*

63. Plaintiff Y.W. is unaware of the factual basis for the termination of their SEVIS status. *ZN Decl.*

64. Plaintiff Y.W. believes that the valid form I-20 issued by their school has not been terminated. *Id.*

65. Plaintiff Y.W. does not have any criminal history in the United States or abroad. *Id.* Plaintiff Y.W. therefore does not have *any* criminal arrest or conviction, let alone a conviction for a crime of violence with a potential sentence of more than one year. *Id.* While Plaintiff Y.W. was previously deported, which was not a criminal matter, they thereafter applied for another F-1 visa with an accompanying waiver of inadmissibility under INA § 212(d)(3) to waive the associated ground of inadmissibility. *Id.* They were subsequently granted and traveled to the United States on the F-1 visa. *Id.* at Exh. J (Visas of Y.W.). This does not render Plaintiff Y.W. ineligible for a visa nor inadmissible or deportable from the United States. *ZN Decl.* No other changes relating to their eligibility for their valid visa status are known to exist. *Id.*

**Plaintiff H.G.**

66. Plaintiff H.G. is currently a graduate student in F-1 status in the Northern District of California. *Id.*

67. Plaintiff H.G. first came to study in the United States on a student visa in 2019 and received an undergraduate degree. *ZN Decl.* at Exh. K (Visas and Form I-20 of H.G.).

68. Plaintiff H.G. thereafter obtained and traveled to the United States on a B-2 visa in 2022, and A-2 visa in 2022, and another F-1 visa in 2024 to begin their graduate program. *Id.*

69. On or about April 4, 2025, Plaintiff H.G. received notice from the university where they are currently a graduate student that their SEVIS status was terminated. *Id.* at Exh. L (SEVIS Revocation of H.G.).

70. The code given for the termination was "Otherwise Failing to Maintain Status." *Id.* The reason listed was that Plaintiff H.G. had been identified in a criminal records check. *Id.*

71. Plaintiff H.G. was informed that the school itself did not terminate their SEVIS status. *Id.*

72. Plaintiff H.G. is unaware of the factual basis for the termination of their SEVIS status. *ZN Decl.*

73. Plaintiff H.G. believes that the valid form I-20 issued by their school has not been terminated. *Id.*

74. Plaintiff H.G.'s only criminal history is an arrest in 2021 for which all the related charges were dismissed by the court. *Id.* at Exh. M (Dismissal Document of H.G.). Plaintiff H.G. therefore does not have *any* conviction, let alone a conviction for a crime of violence with a potential sentence of more than one year. This single arrest and the subsequently dismissed charges do not render Plaintiff H.G. inadmissible to or deportable from the United States. *Id.* Importantly, long before the SEVIS termination on April 4, 2025, Plaintiff H.G. had informed DOS of their arrest without conviction. *Id.* at Exh. K (Visas of H.G.). Subsequent to learning of Plaintiff H.G.'s arrest without conviction, DOS approved the three later applications for nonimmigrant visas—specifically the B-2 and A-2 visas in 2022, and the F-1 visa in 2024—for Plaintiff H.G., because DOS correctly recognized that their arrest and dismissed charges do not render them ineligible for a visa nor inadmissible or deportable from the United States. *Id.*

**Plaintiff W.X.**

75. Plaintiff W.X. is currently in F-1 status, and is employed pursuant to post-graduate STEM OPT employment authorization, which is authorized through their F-1 student status, in the Northern District of California. *ZN Decl.* at Exh. N (Visas of W.X.).

76. Plaintiff W.X. first came to study in the United States on a student visa in 2017, and they received a high school diploma, an undergraduate degree, and eventually a graduate degree in 2024. *ZN Decl.* Since that time, Plaintiff W.X. has worked in the United States pursuant to their F-1 status and associated employment authorization. *Id.*

77. On or about April 4, 2025, Plaintiff W.X. received notice from the university where they obtained their graduate degree, which oversees their post-graduate employment authorization, that their SEVIS status was terminated. *Id.* at Exh. O (SEVIS Revocation of W.X.).

78. The code given for the termination was "Otherwise Failing to Maintain Status." The reason listed was that Plaintiff W.X. had been identified in a criminal records check. *Id.*

79. Plaintiff W.X. was informed that the school itself did not terminate their SEVIS status. *Id.*

80. Plaintiff W.X. is unaware of the factual basis for the termination of their SEVIS status. *ZN Decl.*

81. Plaintiff W.X. believes that the valid form I-20 issued by their school has not been terminated. *Id.*

82. On or about April 9, 2025, Plaintiff W.X. also received notice from DOS that their F-1 visa had been revoked. *Id.* at Exh. P (Visa Revocation of W.X.).

83. Plaintiff W.X.'s only criminal history is an arrest in 2024 for which no charges were filed. *Id.* at Exh. Q (Discharge Document of W.X.). Plaintiff W.X. therefore does not have *any* conviction, let alone a conviction for a crime of violence with a potential sentence of more than one year. *Id.* This single arrest does not render Plaintiff W.X. inadmissible to or deportable from the United States. *Id.*

84. Plaintiff W.X. is highly valued by their employer, which desires for them to continue to work at the company. *ZN Decl.* However, Plaintiff W.X.'s ability to do so is in jeopardy due to the termination of their SEVIS record and status. *Id.*

85. Since they received the notices of their SEVIS terminations, all Plaintiffs have been experiencing high levels of stress and anxiety. *Id.* They are unsure of what will happen to them, and they fear the possibility of several consequences, including the lack of ability to continue

their studies, the lack of ability to continue their OPT employment or to start OPT employment following graduation, the lack of ability to change status to another visa status (such as H-1b or O-1) based on employment obtained after graduation from school, detention and incarceration by ICE, or ultimately deportation or otherwise the obligation to leave the country without any ability to return to their studies, employment, career or community. *Id.*

86. As stated above, ICE's en masse SEVIS terminations have created havoc and uncertainty for schools as well. *Id.* Upon information and belief, Plaintiffs' respective universities were not given any advanced warning or further explanation for the termination of Plaintiffs' SEVIS status. *Id.* Schools are scrambling to respond to these unprecedented actions and determine whether and how they can help their international students.[18]

87. Intervention by the Court is necessary to remedy Defendants' illegal conduct.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Administrative Procedure Act

*(Unauthorized SEVIS Termination)*

88. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

89. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

90. Defendants have no statutory or regulatory authority to terminate Plaintiffs SEVIS records or statuses. This is true even if DOS has revoked any Plaintiff's F-1 visa. Additionally, nothing in Plaintiffs' criminal histories or immigration histories provides a basis for termination.

91. Therefore, Defendants' termination of Plaintiffs' SEVIS statuses is not in accordance with law, in excess of statutory authority, and without observance of procedure required by law.

---

[18] *See* Liam Knox, *How Trump is Wreaking Havoc on the Student Visa System*, Inside Higher Ed, (Apr. 5, 2024), https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

## SECOND CAUSE OF ACTION

### Fifth Amendment

*(Procedural Due Process)*

92. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

93. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

94. Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student and continue any OPT employment, Plaintiffs have a constitutionally protected property interest in their SEVIS registrations. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

95. Defendants terminated Plaintiffs' SEVIS records based on improper grounds without prior notice and without providing Plaintiffs an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

## THIRD CAUSE OF ACTION

### Administrative Procedure Act

*(Procedural Due Process)*

96. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

97. Under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

98. Defendants terminated Plaintiffs' SEVIS record based on improper grounds as no grounds exist that permit such termination, and moreover such termination was without prior notice and without providing Plaintiffs an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

99. Accordingly, Defendants' actions are contrary to a constitutional right.

### FOURTH CAUSE OF ACTION

**Administrative Procedure Act**

*(Arbitrary and Capricious SEVIS Termination)*

100.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

101.    Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including if it fails to make a rational connection between the facts found and the decision made. 5 U.S.C. § 706(2)(A).

102.    Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiffs' SEVIS statuses in violation of the APA, let alone any rational connection between the facts found and the decision made. Based on all known information, no valid grounds exist for the termination of SEVIS and thus such termination was arbitrary and capricious.

103.    Defendants' actions are therefore arbitrary and capricious.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that the termination of Plaintiffs' SEVIS records was unlawful;

(3) Vacate and set aside ICE's termination of Plaintiffs' SEVIS statuses;

(4) Order that Defendants restore Plaintiffs' SEVIS records and valid nonimmigrant F-1 visa statuses;

1    (5) Enjoin Defendants from taking any enforcement action against Plaintiffs arising

2        directly or indirectly from their criminal or immigration histories, the unlawful

3        termination of their SEVIS, or the potential unlawful revocation of their F-1

4        visas which may have already occurred;

5    (6) Enjoin Defendants from detaining Plaintiffs pending these proceedings;

6    (7) Enjoin Defendants from transferring Plaintiffs away from the jurisdiction of this

7        District pending these proceedings;

8    (8) Enjoin Defendants from removing Plaintiffs from the United States pending

9        these proceedings;

10   (9) Award reasonable costs and attorney fees; and

11   (10) Grant such further relief as the Court deems just and proper.

12

13   Dated: April 11, 2025                    Respectfully submitted,

14                                            s/ Zachary Nightingale

15                                            Zachary Nightingale
                                              Attorney for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Declaratory and
Injunctive Relief              19              Case No. 5:25-cv-03244