Zachary Nightingale (California Bar # 184501)
Van Der Hout LLP
360 Post St., Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| S.Y., Z.D., Y.W., H.G., W.X., <br><br> Plaintiffs, <br><br> v. <br><br> Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security; <br><br> Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; <br><br> Moises BECERRA, in his official capacity, Acting Field Office Director of San Francisco Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security; and <br><br> Donald J. TRUMP, in his official capacity, President of the United States of America; <br><br> Defendants. | Case No. 5:25-cv-03244-NW <br><br> **MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> **POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION: HEARING REQUESTED** <br><br> <u>Request for Declaratory and Injunctive Relief</u> |

Motion for TRO; Points and Authorities in Support of          Case No. 5:25-cv-03244-NW
Plaintiffs' Motion for Ex Parte TRO/PI

**NOTICE OF MOTION**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Rule 65-1 of the Local rules of this Court, Plaintiffs hereby move this Court for an order enjoining Defendants Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), Moises Becerra in his official capacity at the Acting Field Office Director of the San Francisco ICE Office of Detention and Removal, and Donald J. Trump in his official capacity as President of the United States of America from taking any enforcement action against Plaintiffs arising directly or indirectly the unlawful termination of their Student and Exchange Visitor Information Systems ("SEVIS") records or the potential unlawful revocation of their F-1 visas. Such enforcement action includes: detaining Plaintiffs pending these proceedings, transferring Plaintiffs away from the jurisdiction of this District pending these proceedings, and removing Plaintiffs from the United States pending these proceedings.

Plaintiffs, through this temporary restraining order, therefore seek an order preventing Defendants from arresting and incarcerating them in an immigration jail pending the resolution of these proceedings. Plaintiffs further seek that Defendants revocation of Plaintiffs' SEVIS accounts be declared without legal force for the duration of this litigation, which is necessary to maintain the status quo in their cases whereby they continue to be in valid F-1 nonimmigrant status, continue to attend school and work pursuant to their valid F-1 student statuses (and their underlying valid I-20s), and may seek the concomitant benefits of that valid status, such as the legal eligibility to apply for Optional Practice Training, Curricular Practical Training, or a change of status to another nonimmigrant visa status, or adjustment of status to lawful permanent resident, while this litigation remains pending.

Plaintiffs also seek an order requiring parties to redact or file any information identifying Plaintiffs under seal, and an order limiting the sharing by government counsel of any information about Plaintiffs' identities or related personal information beyond what is reasonably necessary for this litigation (including to comply with Court orders) and to prohibit use of the information

for any purpose outside of the litigation.

The reasons in support of this Motion are set forth in the accompanying Memorandum of Points and Authorities. This Motion is based on the Complaint for Declaratory and Injunctive Relief Under the Administrative Procedure Act and the Declaratory Judgment Act (Dkt. 1), as well as the Declaration of Zachary Nightingale with Accompanying Exhibits (Dkt. 1-1, Exhibits ("Exhs.") A-Q). As set forth in the Points and Authorities in support of this Motion, Plaintiffs raise that they warrant a temporary restraining order due to their weighty liberty interests under the Due Process Clause of the Fifth Amendment in remedying the unlawful revocation of their SEVIS statuses, to preserve their status quo ability to pursue their education and relevant employment opportunities pursuant to that education, and to prevent against any further enforcement action by the government stemming from these unlawful SEVIS terminations.

WHEREFORE, Plaintiffs pray that this Court grant their request for a temporary restraining order enjoining Defendants from arresting and incarcerating Plaintiffs pending resolution of these proceedings, transferring Plaintiffs away from the jurisdiction of this District pending these proceedings, and removing Plaintiffs from the United States pending these proceedings, as well as an order that Defendants' termination of Plaintiffs' SEVIS records be declared without legal force for the duration of this litigation, which is necessary to maintain the status quo in their cases such that they may continue to attend school and work pursuant to their F-1 student statuses while this litigation remains pending.

Plaintiff also requests that the Court issue an order requiring parties to redact or file any information identifying Plaintiff under seal, and an order limiting the sharing by government counsel of any information about Plaintiff's identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation.

The only mechanism to ensure that Plaintiffs are not unlawfully detained, transferred, or removed in violation of their due process rights, or subject to further irreparable harm resulting from the unlawful termination of their SEVIS accounts, is an ex-parte temporary restraining order from this Court.

1   Dated: April 16, 2025                    Respectfully Submitted

2                                            /s/Zachary Nightingale

3                                            Zachary Nightingale
                                             Attorney for Plaintiffs
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion for Ex Parte TRO/PI                    Case No. 5:25-cv-03244-NW

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF FACTS AND CASE ............................................................. 4

    A.  PLAINTIFF S.Y. ........................................................................................ 4

    B.  PLAINTIFF Z.D. ........................................................................................ 6

    C.  PLAINTIFF Y.W. ....................................................................................... 7

    D.  PLAINTIFF H.G. ....................................................................................... 8

    E.  PLAINTIFF W.X. ....................................................................................... 8

    F.  CORRESPONDENCE WITH DEFENDANTS' COUNSEL ................................. 10

III.  LEGAL STANDARD .......................................................................................... 10

IV.   ARGUMENT ........................................................................................................ 10

    A.  PLAINTIFFS WARRANT A TEMPORARY RESTRAINING ORDER ............. 10

        1.  Plaintiffs are Likely to Succeed on the Merits of Their Claims That Defendants' Actions Violated the Administrative Procedure Act and Plaintiffs' Due Process Rights ................................................................ 11

        2.  Plaintiffs will Suffer Irreparable Harm Absent Injunctive Relief ............. 17

        3.  The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order ...................................................................... 20

V.    CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 10
*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ................................................................. 20
*Armstrong v. Manzo*,
    380 U.S. 545 (1965) ................................................................................ 16
*ASSE Int'l, Inc. v. Kerry*,
    803 F.3d 1059 (9th Cir. 2015) ................................................................. 16
*Baldwin v. Hale*,
    68 U.S. 223 (1864) .................................................................................. 16
*Borden v. United States*,
    593 U.S. 420 (2021) ................................................................................ 12
*Brown v. Holder*,
    763 F.3d 1141 (9th Cir. 2014) ............................................................ 16, 17
*Fuentes v. Shevin*,
    407 U.S. 67 (1972) .................................................................................. 16
*Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda*,
    415 U.S. 423 (1974) ................................................................................ 10
*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ............................................................. 21, 22
*Jie Fang v. Dir. United States Immigr. & Customs Enf't*,
    935 F.3d 172 (3d Cir. 2019) .............................................................. 13, 14
*Lopez v. Heckler*,
    713 F.2d 1432 (9th Cir. 1983) ................................................................. 20
*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................ 16
*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ................................................................... 20
*Nakka v. United States Citizenship & Immigr. Servs.*,
    111 F.4th 995 (9th Cir. 2024) ................................................................. 14
*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ................................................................... 20
*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................... 9
*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ................................................................. 20
*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................... 9
*Zepeda v. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) ................................................................... 19

Statutes

5 U.S.C. § 705.............................................................................................................. 22
5 U.S.C. § 706(2)(A), (C)-(D)................................................................... 14, 15, 22
5 U.S.C. § 706(2)(B)................................................................................................. 15
8 U.S.C.§ 1101(a)(15)(F)(i)..................................................................................... 11
8 U.S.C. § 1182(d)(3) or (4)..................................................................................... 13
8 U.S.C. § 1201(i)....................................................................................................... 13
8 U.S.C. § 1227(a)(1)(B)........................................................................................... 13
8 U.S.C. § 1227(a)(1)(C)(i)....................................................................................... 14
8 U.S.C. § 1227(a)(4)(C)(i)....................................................................................... 14
8 U.S.C. § 1252(a)(1)................................................................................................. 14
California Penal Code § 415........................................................................................ 6
California Vehicle Code § 23152(b)........................................................................... 5
USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001............................. 11

Rules

Fed. R. Civ. P. 65(b)................................................................................................... 10

Regulations

8 C.F.R. § 214.1(d)....................................................................................... 12, 14, 15
8 C.F.R. § 214.1(g)............................................................................................. 12, 15
8 C.F.R. §§ 214.1(e)–(f)........................................................................................... 15
8 C.F.R. §§ 214.1(e)–(g)........................................................................................... 12
8 C.F.R. § 214.2(f).......................................................................................... 11, 12, 14
8 C.F.R. § 214.3(g)(2)....................................................................................... 11, 12
8 C.F.R. § 1003.18(d)(ii)(B)..................................................................................... 14
8 C.F.R. § 1241.1....................................................................................................... 14

Other Authorities

ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), ............................. 13
Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016)......... 13

I.    **INTRODUCTION**

Plaintiffs S.Y., Z.D., Y.W., H.G., and W.X. by and through undersigned counsel, hereby file this motion for a temporary restraining order and preliminary injunction to prevent Defendants from taking any enforcement action against Plaintiffs arising directly or indirectly from the unlawful termination of their SEVIS records or the potential unlawful revocation of their F-1 visas. Such enforcement action includes: detaining Plaintiffs pending these proceedings, transferring Plaintiffs away from the jurisdiction of this District pending these proceedings, and removing Plaintiffs from the United States pending these proceedings.

Plaintiffs, through this temporary restraining order, also ask that the Court enjoin Defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the decision to terminate Plaintiffs' SEVIS records, and until the merits of Plaintiffs' Complaint are resolved. Plaintiffs further seek to maintain the status quo whereby they may continue to attend school and work pursuant to their F-1 student statuses (and underlying valid I-20s), and they may seek the concomitant opportunities that are part and parcel of that valid status such as the legal eligibility to apply for Optional Practice Training ("OPT"), Curricular Practical Training ("CPT"), or a change of status to another nonimmigrant visa status, or adjustment of status to lawful permanent resident, while this litigation remains pending.

Plaintiffs also seek an order requiring the parties to redact or file any information identifying Plaintiffs under seal, and an order limiting the sharing by government counsel of any information about Plaintiffs' identities or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation.

Plaintiffs S.Y., Z.D., Y.W., H.G., and W.X. are all individuals in lawful F-1 visa status who are maintaining their status by being either current students *or* former students who are now employed pursuant to post-graduate OPT employment authorization. They are several of hundreds, if not more, F-1 students nationwide whose SEVIS records, like those of Plaintiffs here, have been abruptly and unlawfully terminated by the U.S. Department of Homeland

Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE") since approximately April 4, 2025, in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis.

There are two distinct but related problems with ICE's termination of the SEVIS records. First, the grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiffs' SEVIS records, and neither do the underlying facts referred to by ICE as they do not amount to any violation of the students' lawful status. Second, ICE appears to be taking the position that the termination of an individual's SEVIS record effectively ends their F-1 visa status, which is not the case. Even when a visa is revoked, ICE is not authorized to terminate Plaintiffs' F-1 student statuses. Here, Plaintiffs have been in full compliance with the terms of their F-1 status and have not engaged in any conduct that would warrant termination of their status.

Rather, ICE's policy of unlawfully terminating SEVIS records—whether in conjunction with F-1 visa revocations or not—appears to be designed to coerce students, including Plaintiffs, into abandoning their studies or post-graduate employment and choosing to voluntarily leave the country, despite not having violated their status. For example, on March 5, 2025, DOS informed a graduate student at Columbia University, Ranjani Srinivasan, that her F-1 student visa had been cancelled, with her SEVIS subsequently terminated.[1] On March 14, 2025, Secretary of Homeland Security Kristi Noem issued a post on X, accompanied by a video of Ranjani Srinivasan: "I'm glad to see one of the Columbia University terrorist sympathizers use the CBP Home app to self deport."[2] In another example, on April 9, 2025, Plaintiff W.X. received an email from DOS revoking their F-1 visa. Dkt. 1-1 at Exh. P. That email includes the following language:

> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future

[1] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html.

[2] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488.

U.S. visa.  Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States.  Persons being deported may be sent to countries other than their countries of origin.

Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome.

*Id.* Plaintiffs S.Y. and Z.D. have both received similar notices. *Id.* at Exhs. C, H.

Other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals far from their homes, school, and communities, by physically moving them to detention centers in Texas and Louisiana once detained. There have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainees across state lines to detention facilities in Louisiana and Texas.[3] On information and belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved far from their home, school/employer and community, to a detention facility in Texas or Louisiana the day before or day of their bond hearing in immigration court.

If ICE believes a student is deportable for having violated their visa status, or any other lawful reason, it has the authority to initiate removal proceedings and make its case in immigration court. ICE cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process. ICE similarly cannot engage in

---

[3] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); *What we know about the Tufts University PhD student detained by federal agents*, CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

retaliatory arrests and transfers – without legal basis if the SEVIS termination was unlawful -- to further intimidate students into abandoning their studies and fleeing the country to avoid arrest.

Plaintiffs meet the standard for a temporary restraining order. They will suffer immediate and irreparable harm absent an order from this Court enjoining Defendants from taking further unlawful action stemming from the unlawful termination of their SEVIS records—including arrest and detention—during the pendency of these proceedings. Since holding federal agencies accountable to constitutional demands is in the public interest, the balance of equities and public interest also tip strongly in Plaintiffs' favor.

## II. <u>STATEMENT OF FACTS AND CASE</u>

As mentioned above, Plaintiffs S.Y., Z.D., Y.W., H.G., and W.X.  are all individuals in lawful F-1 visa status who are maintaining their status by being either current students *or* employed pursuant to post-graduate OPT employment authorization. Since April 4, 2025, their SEVIS records were abruptly and unlawfully terminated by ICE without any notice or basis for the termination.

SEVIS is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor students' statuses. Within a short time period starting April 4, 2025, SEVP terminated each Plaintiff's SEVIS record and marked each Plaintiff as "Otherwise Failing to Maintain Status – Individual identified in criminal records check and/or has had their visa revoked," with no citation to any provision of law that indicates a basis for not maintaining status, or other facts that indicate a lack of status, or an actual violation of their status. All Plaintiffs have had some form of law enforcement contact in the United States—but none of them have any criminal history that violates the terms of their F-1 status or otherwise renders them deportable.

### A. <u>PLAINTIFF S.Y.</u>

Plaintiff S.Y. is currently a graduate student in F-1 status in the Northern District of California. They first came to study in the United States on a student visa in 2013 and completed an undergraduate degree.

In 2018, Plaintiff S.Y.'s F-1 visa was revoked by DOS due to a misdemeanor conviction

they sustained for driving under the influence. Their F-1 status was not terminated at that time. Plaintiff S.Y. thereafter re-applied for a new F-1 visa at a U.S. consulate abroad, and submitted the requisite medical examination and relevant court documents as part of the application. In 2018, Plaintiff S.Y. was then issued a new F-1 visa, and they reentered the United States to continue their studies and complete their undergraduate degree.

In 2024, Plaintiff S.Y. applied for and obtained another F-1 visa, again fully revealing the prior misdemeanor, and entered the United States to begin their graduate program.

On or about April 8,, 2025, Plaintiff S.Y. received notice from the university where they are currently a graduate student that their SEVIS status was terminated. The only explanation was a code given for the termination which was "Otherwise Failing to Maintain Status." The reason listed was that Plaintiff S.Y. had been identified in a criminal records check.

Plaintiff S.Y. was informed that the school itself did not terminate their SEVIS status, and is otherwise unaware of the factual basis for the termination of their SEVIS status. Plaintiff S.Y. believes that the valid I-20 issued by their school has not been terminated. On or about April 9, 2025, Plaintiff S.Y. also received notice from DOS that their F-1 visa had been revoked.

Plaintiff S.Y.'s only criminal history is the 2018 misdemeanor conviction for California Vehicle Code § 23152(b), for which they paid a fine and completed classes pursuant to the First Offender program. Plaintiff S.Y.'s minor misdemeanor conviction is not for a crime of violence, nor did it carry a potential sentence of more than one year. This single conviction does not render Plaintiff S.Y. inadmissible to or deportable from the United States.. Importantly, long before the SEVIS termination on April 8, 2025, Plaintiff S.Y. had informed DOS of their criminal conviction. Subsequent to learning of Plaintiff S.Y.'s conviction, DOS reissued them another F-1 visa in 2018, and thereafter approved Plaintiff S.Y.'s current F-1 visa in 2024, and Plaintiff S.Y. was admitted into the United States, again with knowledge of that conviction, because their conviction does not render them ineligible for a visa nor inadmissible to, or deportable from, the United States.

Plaintiff S.Y. has had no other law enforcement contact that would raise any other question of a possible violation of their visa status, other than the one misdemeanor which

occurred and was disclosed long before the instant visa was granted.

**B. PLAINTIFF Z.D.**

Plaintiff Z.D. is currently in valid F-1 status, and is employed pursuant to post-graduate OPT employment authorization, which is authorized through their F-1 student status, in the Northern District of California.

Plaintiff Z.D. first came to study in the United States on a student visa in 2021, and they received an undergraduate degree and eventually a graduate degree in 2024. Since that time, Plaintiff Z.D. has lawfully worked in the United States pursuant to their F-1 OPT status and associated employment authorization.

On or about April 4, 2025, Plaintiff Z.D. received notice from their graduate university that their SEVIS status was terminated. The code given for the termination was "Otherwise Failing to Maintain Status." The reason listed was that Plaintiff Z.D. had been identified in a criminal records check. On or about April 6, 2025, Plaintiff Z.D. also received notice from DOS that their F-1 visa had been revoked.

Plaintiff Z.D. was not informed by their graduate university that the school itself terminated their SEVIS status, and Plaintiff Z.D. is unaware of the factual basis for the termination of their SEVIS status. Plaintiff Z.D. believes that the valid form I-20 issued by their school has not been terminated. On or about April 6, 2025, Plaintiff Z.D. also received notice from DOS that their F-1 visa had been revoked.

Plaintiff Z.D.'s only criminal history is a 2024 conviction for misdemeanor California Penal Code § 415 (disturbing the peace) for which they paid a fine. Plaintiff Z.D.'s minor misdemeanor conviction is not for a crime of violence, nor did it carry a potential sentence of more than one year, and thus does not trigger the regulatory provision for a criminal matter that violates the terms of a nonimmigrant visa. This single conviction also does not render Plaintiff Z.D. inadmissible to or deportable from the United States.

Plaintiff Z.D. is highly valued by their employer, which desires for them to continue to work at the company. However, Plaintiff Z.D.'s ability to do so is in jeopardy due to the termination of their SEVIS record and status.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.  **PLAINTIFF Y.W.**

Plaintiff Y.W. is currently an undergraduate student in F-1 status in the Northern District of California.

Plaintiff Y.W. first came to study in the United States on a student visa in 2021. Plaintiff Y.W. left the country and in 2022 attempted to return to the United States for the purpose of transiting though the country on their way to another destination. However, their visa was not appropriate for that purpose, which was an oversight on their part. As a result, Plaintiff Y.W. was then denied entry to the United States, and they were subjected to expedited removal and thus deported from the United States.

Plaintiff Y.W. thereafter sought to return lawfully to continue their studies. As part of their application for a new F-1 student visa, Plaintiff Y.W. applied for and received a waiver of their inadmissibility (for the prior deportation) under INA § 212(d)(3), which was granted by DOS. With the waiver for that inadmissibility granted, they were again eligible to enter the United States lawfully. They traveled to the United States on that new F-1 visa in 2024 to continue their undergraduate program.

On or about April 4, 2025, Plaintiff Y.W. received a phone call from the international students' office from the university where they are currently an undergraduate student informing them that their SEVIS status was terminated. They were not given a reason for the termination. Plaintiff Y.W. was informed that the school itself did not terminate their SEVIS status, but they are unaware of the factual basis for the termination of their SEVIS status. Plaintiff Y.W. believes that the valid form I-20 issued by their school has not been terminated.

Plaintiff Y.W. does not have any criminal history in the United States or abroad. Plaintiff Y.W. therefore does not have *any* criminal arrest or conviction, let alone a conviction for a crime of violence with a potential sentence of more than one year. While Plaintiff Y.W. was previously deported, which was not a criminal matter, they thereafter applied for another F-1 visa with an accompanying waiver of inadmissibility under INA § 212(d)(3) to waive the associated ground of inadmissibility. That waiver was granted. They were subsequently also granted and traveled to the United States on the F-1 visa. This does not render Plaintiff Y.W.

ineligible for a visa nor inadmissible or deportable from the United States, and no other changes relating to their eligibility for their valid visa status are known to exist.

### D.  **PLAINTIFF H.G.**

Plaintiff H.G. is currently a graduate student in F-1 status in the Northern District of California.

Plaintiff H.G. first came to study in the United States on a student visa in 2019 and received an undergraduate degree.

Plaintiff H.G. thereafter obtained and traveled to the United States on a B-2 visa in 2022, an A-2 visa in 2022, and another F-1 visa in 2024 to begin their graduate program.

On or about April 4, 2025, Plaintiff H.G. received notice from the university where they are currently a graduate student that their SEVIS status was terminated. The code given for the termination was "Otherwise Failing to Maintain Status." The reason listed was that Plaintiff H.G. had been identified in a criminal records check. Plaintiff H.G. was informed that the school itself did not terminate their SEVIS status, but they are unaware of the factual basis for the termination of their SEVIS status. Plaintiff H.G. believes that the valid form I-20 issued by their school has not been terminated.

Plaintiff H.G.'s only criminal history is an arrest in 2021 for which all the related charges were dismissed by the court. Plaintiff H.G. therefore does not have *any* conviction, let alone a conviction for a crime of violence with a potential sentence of more than one year. This single arrest and the subsequently dismissed charges do not render Plaintiff H.G. inadmissible to or deportable from the United States. Importantly, long before the SEVIS termination on April 4, 2025, Plaintiff H.G. had informed DOS of their criminal arrest without conviction. Subsequent to learning of Plaintiff H.G.'s arrest without conviction, DOS approved the three later applications for nonimmigrant visas—specifically the B-2 and A-2 visas in 2022, and the F-1 visa in 2024—for Plaintiff H.G., because DOS correctly recognized that their arrest and dismissed charges do not render them ineligible for a visa nor inadmissible or deportable from the United States.

### E.  **PLAINTIFF W.X.**

Plaintiff W.X. is currently in F-1 status, and is employed pursuant to post-graduate STEM OPT employment authorization, which is authorized through their F-1 student status, in the Northern District of California.

Plaintiff W.X. first came to study in the United States on a student visa in 2017, and they received a high school diploma, an undergraduate degree, and eventually a graduate degree in 2024. Since that time, Plaintiff W.X. has worked in the United States pursuant to their F-1 status and associated employment authorization.

On or about April 4, 2025, Plaintiff W.X. received notice from the university where they obtained their graduate degree, which oversees their post-graduate employment authorization, that their SEVIS status was terminated. The code given for the termination was "Otherwise Failing to Maintain Status." The reason listed was that Plaintiff W.X. had been identified in a criminal records check. Plaintiff W.X. was informed that the school itself did not terminate their SEVIS status, but they are unaware of the factual basis for the termination of their SEVIS status. Plaintiff W.X. believes that the valid form I-20 issued by their school has not been terminated. On or about April 9, 2025, Plaintiff W.X. also received notice from DOS that their F-1 visa had been revoked.

Plaintiff W.X.'s only criminal history is an arrest in 2024 for which no charges were filed. Plaintiff W.X. therefore does not have *any* conviction, let alone a conviction for a crime of violence with a potential sentence of more than one year. This single arrest does not render Plaintiff W.X. inadmissible to or deportable from the United States.

Plaintiff W.X. is highly valued by their employer, which desires for them to continue to work at the company. However, Plaintiff W.X.'s ability to do so is in jeopardy due to the termination of their SEVIS record and status.

Since they received the notices of their SEVIS terminations, all Plaintiffs have been experiencing high levels of stress and anxiety. They are unsure of what will happen to them, and they fear the possibility of several consequences, including the lack of ability to continue their studies, the lack of ability to continue their OPT employment, or ability to start OPT employment following graduation, the lack of ability to change status to another visa status

(such as H-1b or O-1) based on employment obtained after graduation from school, detention and incarceration by ICE, or ultimately deportation or otherwise an obligation to leave the country without any ability to return to their studies, employment, career, or community.

Intervention from this Court is therefore required to ensure that Plaintiffs do not continue to suffer irreparable harm.

### F.  CORRESPONDENCE WITH DEFENDANTS' COUNSEL

On April 11, 2025, undersigned counsel for Plaintiffs corresponded with Defendants' counsel via email to notify counsel of Plaintiffs intent to file the instant Motion for a Temporary Restraining Order. *See* Declaration of Zachary Nightingale ("ZN Decl."). On April 14, 2025, Defendants' counsel stated they have notified Defendants of this case, but that Defendants cannot stipulate to the terms herein at this time. *Id.*

## III.   LEGAL STANDARD

Plaintiffs are entitled to a temporary restraining order where they establish that they are "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). Even if Plaintiffs do not show a likelihood of success on the merits, the Court may still grant a temporary restraining order if they raise "serious questions" as to the merits of their claims, the balance of hardships tip "sharply" in their favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). As set forth in more detail below, Plaintiffs overwhelmingly satisfy both standards.

## IV.   ARGUMENT

### A.  PLAINTIFFS WARRANT A TEMPORARY RESTRAINING ORDER

A temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result" to the applicant in the absence of an order. Fed. R. Civ. P. 65(b). The purpose of a temporary restraining order is to prevent irreparable harm before a

preliminary injunction hearing is held. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974). As explained above, Plaintiffs' SEVIS records were abruptly and unlawfully terminated by ICE in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis. They are being informed by government messages that effective immediately they cannot continue their education or related employment. Some of them have received communication from the government suggesting they should immediately leave the country under threat of detention, and even possible deportation to a third country. Given the government's own statements and the actions related to similarly situated international students, Plaintiffs are at serious and immediate risk of further unlawful enforcement action by ICE—including arrest, detention, being transferred against their will out of the jurisdiction of this District, and deportation from the United States. The unlawful revocation of their SEVIS records without notice or opportunity to respond, and without legal basis, clearly violated Plaintiffs' due process rights and was otherwise arbitrary and capricious. Plaintiffs have already suffered irreparable injury to their wellbeings and their lives as undergraduate students, graduate students and students engaging in practical training as valued employees in the United States.

### 1. Plaintiffs are Likely to Succeed on the Merits of Their Claims That Defendants' Actions Violated the Administrative Procedure Act and Plaintiffs' Due Process Rights

Plaintiffs are likely to succeed on their claim that, by abruptly revoking Plaintiffs' SEVIS records without any lawful or valid basis, and without any notice or an opportunity to respond, Defendants acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA") and further violated the procedural due process rights of all Plaintiffs.

A nonimmigrant visa printed in a passport provides a basis for a noncitizen's admissibility into the United States, but does not control their continued lawful stay in the United States after they are admitted. Congress established a statutory basis for student visas under 8 U.S.C. § 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Implementing regulations further permit F-1 nonimmigrants to obtain employment authorization for OPT "directly related to the student's major area of study." 8

C.F.R. § 214.2(f)(10)(A)(3), (C). Once a holder of an F-1 visa is admitted in F-1 status, a student is granted permission to remain in the United States not for a fixed period time, as is the case for other nonimmigrant visa holders, but rather for the duration of status (annotated as D/S) That status endures (separate from the validity of the visa itself) as long as they continue to meet the requirements established by the regulations governing their visa classification at 8 C.F.R. § 214.2(f), such as maintaining a full course of study or engaging in authorized post-graduate employment, and avoiding unauthorized employment.

In order to obtain an F-1 visa, the school at which the student will study issues a form I-20 to the student confirming their attendance and enrollment in the school, with an expected duration of study. Often, the form I-20 is updated as the student's curricular progress is updated, both in substance and duration. As long as there is a valid I-20 issued to the student by the school, then the individual is considered to be maintaining their lawful status.

Before 2001, there was no centralized database to track student visa holders in the United States, as it is not inherent to the legal ability of a student to maintain status. After 2001, Congress created the SEVIS system to track the status of nonimmigrant visa holders admitted for "duration of status."[4] SEVIS is a centralized database maintained by the SEVP within ICE, and it is used to manage information on nonimmigrant students and exchange visitors and to track their compliance with the terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials ("DSOs") must report through SEVIS to SEVP when a student or post-graduate employee fails to maintain status. SEVIS termination is governed by SEVP policy and regulations.[5] SEVIS termination can only be based on a student's failure to maintain status.[6]

DHS regulations distinguish between two separate ways a student may fail to maintain status: (1) a student or post-graduate employee who "fails to maintain status," and (2) an agency-initiated "termination of status."

---

[4] USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001.
[5] *See SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 6, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.
[6] *See id.*

The first category, failure to maintain status, involves circumstances where a student or post-graduate employee voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Arrests that do not result in any conviction, and minor infractions or misdemeanor offenses, do not meet this regulatory threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 427 (2021).

The second category, termination of status by ICE, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot otherwise unilaterally terminate nonimmigrant status.[7]

Accordingly, the existence of an arrest (or even minor conviction) does not constitute a basis for SEVIS termination. Likewise, the revocation of a *visa* does not constitute failure to

---

[7] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter the country and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation *after* a student has already been admitted into the United States, because status is not terminated by visa revocation, and the student or post-graduate employee is permitted to continue the authorized course of study or employee.[8]

ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[9] Rather, if the visa is revoked, the student or post-graduate employee is permitted to pursue their course of study in school or authorized post-graduate employment, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[10]

While a visa revocation *can* be charged as a ground of deportability in removal proceedings before an immigration judge, such alleged deportability can be contested in such proceedings.[11] The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student or post-graduate employee is able to remain in valid status.[12] Only when a final removal order is entered would an individual's status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

A student or post-graduate employee who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter. *See* 8 C.F.R. § 214.1(d) (establishing the three limited circumstances under which DHS can terminate

---

[8] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf
[9] *Id.*
[10] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.
[11] *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).
[12] 8 C.F.R. § 1003.18(d)(ii)(B).

status). Moreover, there is no provision for termination of SEVIS based on law enforcement contact.

The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[13] Only the presence or absence of lawful status can be reviewed by the immigration judge. The termination of a SEVIS record therefore constitutes final agency action for purposes of APA review.[14]

Under § 705 of the APA, to prevent irreparable injury, a reviewing court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." Here, Defendants' actions in abruptly and unlawfully terminating the SEVIS records of Plaintiffs violated both the APA and the individual Plaintiffs' due process rights. Justice therefore requires that this Court prevent further irreparable injury to Plaintiffs by issuing this temporary restraining order to preserve Plaintiffs' statuses and rights pending conclusion of the review proceedings and effectively postpone the agency action. 5 U.S.C. § 705.

First, pursuant to § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

As set out above, Defendants have no statutory or regulatory authority to terminate Plaintiffs SEVIS records or statuses, as nothing in Plaintiffs' criminal histories or immigration histories provides a basis for termination. This is true even if DOS has revoked any Plaintiff's F-1 visa, as the revocation of an F-1 visa is not a basis for SEVIS termination. Specifically, none of the Plaintiffs have failed to maintain status that would warrant SEVIS termination pursuant to the controlling regulations. 8 C.F.R. § 214.2(f). Based on all known information, none of the Plaintiffs have engaged in unauthorized employment, and none have provided false information to DHS. 8 C.F.R. §§ 214.1(e)–(f). While all Plaintiffs here have law enforcement contact in some

---

[13] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).
[14] *See Fang*, 935 F.3d at 185.

form—either with immigration officials, or by being arrested or sustaining minor misdemeanor convictions—none of the Plaintiffs have any conviction for a crime of violence with a potential sentence of more than a year, and some have already been granted new visas by consular officials who were fully aware of the prior misdemeanor on their record, and some have no conviction at all. 8 C.F.R. § 214.1(g).

Moreover, ICE cannot unilaterally terminate their SEVIS records because the relevant conditions for such termination do not exist: none of the Plaintiffs were previously granted a waiver under INA § 212(d)(3) or (4) that has since been revoked, a private bill to confer lawful permanent residence relevant to the Plaintiffs has not been introduced in Congress, and ICE has not otherwise published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). What is more, Defendants failed to articulate the facts that formed a basis for their decisions to terminate Plaintiffs' SEVIS statuses in violation of the APA, and Defendants further failed to articulate any rational connection between the facts found and the decision made.

Accordingly, Defendants' actions in abruptly terminating the SEVIS records of Plaintiffs—actions which had no basis in the law—were arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A), (C)-(D). Defendants have therefore violated the APA.

Second, under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).

Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student (or post graduate employee engaging in authorized post-graduate employment pursuant to student status) in SEVIS is governed by specific and mandatory regulations, as set out above. Because these regulations impose *mandatory* constraints on agency action, and because SEVIS registration is

necessary for a student to remain enrolled as an international student and/or continue any OPT employment, Plaintiffs have a constitutionally protected property interest in their SEVIS registrations. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

Defendants terminated Plaintiffs' SEVIS records based on improper grounds, as no grounds exist that permit such termination, and moreover such termination was without prior notice such that Plaintiffs were provided with no opportunity to respond. *Fuentes*, 407 U.S. at 80 ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'") (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1864); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The need for that opportunity to respond, and the resulting prejudice from the absence of that opportunity, is clear here, as each of the Plaintiffs would have a valid basis on which to dispute any violation of their status if such a forum existed in which to do so—they could provide the evidence that they sustained no conviction, or that their minor conviction has already been presented to the government officials who already granted the visa, or that the conviction was so minor that it is nowhere close to the kind of offense that constitutes a violation of their status under the relevant existing law. Defendants' failure to provide notice to Plaintiffs of the facts that formed the basis for the SEVIS termination was therefore a violation of due process under the Fifth Amendment

Thus, Plaintiffs have established that they are likely to succeed on the merits of their claims.

### 2. Plaintiffs will Suffer Irreparable Harm Absent Injunctive Relief

Each Plaintiff will suffer irreparable harm were a temporary restraining order not issued, their arrests by Defendants not prohibited, and the legal effect of the termination of their SEVIS

statuses not temporarily enjoined for the duration of this litigation. Plaintiffs are currently at risk of further unlawful enforcement action by Defendants—including arrest and detention—which would likely lead to them being transferred to another jurisdiction far away from their communities, and deportation.

As described above, other students and post-graduate employees who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals far from their homes, school, and communities, by physically moving them to detention centers in Texas and Louisiana once detained. For example, there have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainees across state lines to detention facilities in Louisiana and Texas.[15] On information and belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved to the South the day before or day of their bond hearing in immigration court.

Their fear and concern of similar actions against them is not hypothetical, as Plaintiffs themselves are now starting to receive communication from the government informing them directly that if they are in the United States without status, they could be detained, and even removed to a third country. Dkt. 1-1, Exh. C, H, P. Such statements are a clear reference to the well-publicized examples of other international students who have been so detained, and are

---

[15] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); "What we know about the Tufts University PhD student detained by federal agents," CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

clearly intended to be a warning that similar actions could take place against Plaintiffs themselves. *Id.*

Over the past two weeks, visa revocations and SEVIS terminations have shaken campuses across the country and California, including those in the University of California system and Stanford University.[16] The targeted SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students who are justifiably frightened about being arrested and shipped to an immigration jail far away from their communities.

Apart from fearing the very real possibility of further unlawful enforcement action, since receiving the notices of their SEVIS terminations, all Plaintiffs have been experiencing high levels of stress and anxiety. They are unsure of what will happen to them, and they fear the possibility of several consequences, including the lack of ability to continue their studies, the lack of ability to continue their OPT employment connected with their education, or ability to start OPT employment following graduation in the coming few months, the lack of ability to change status to another visa status (such as H-1b or O-1 relating to employment in professional capacity or by someone with outstanding abilities) based on employment obtained after graduation from school (as such change of status must be filed while the individual is still in a valid status), detention and incarceration by ICE far away from their communities in the United States, or ultimately deportation or otherwise the obligation to leave the country without any ability to return to their studies, employment, career, or community.

Interruption of their multi-year education in the United States, often after years of hard

---

[16] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Kaleem, Jaweed, *Trump administration cancels dozens of international student visas at University of California, Stanford*, Los Angeles Times, April 5, 2025, https://www.latimes.com/california/story/2025-04-05/trump-administration-cancels-international-student-visas-university-of-california-stanford.

work and investment of time and resources, would be an irreparable injury. Interruption of their employment as part of that education which is often the next step to a successful career based on their education in the United States would be an irreparable injury to themselves and their employer. Being unable to move on to the next step in their education or career such as practical training or another work-related visa would be an irreparable injury—because the absence of the ability to continue in valid status would mean having to depart the country. In this case the circumstances of such departure strongly indicate the absence of any ability to return, especially given that some of the Plaintiffs had previously departed, presented their criminal history, and were granted the very visa of which they are now accused of having violated the terms. That strongly suggests that if allowed to stand, any other future visa application would be denied under whatever justification the government currently believes requires the revocation of their current status. Therefore, if Plaintiffs' visa statuses are allowed to be terminated, they will be obligated to leave the country and can expect to never be permitted to return.

Thus, a temporary restraining order is necessary to prevent Plaintiffs from suffering irreparable harm by being subjected to further unlawful enforcement action stemming from the unlawful termination of their SEVIS records.

### 3. The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order

The balance of equities and the public interest undoubtedly favor granting this temporary restraining order.

First, the balance of hardships strongly favors Plaintiffs. The government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Plaintiffs are students and post-graduate employees who have maintained their student statuses, are actively engaged in educational activities, or in some cases are lawfully employed, which has been the status quo for multiple years. To the extent there was some minimal misdemeanor criminal activity, it was often many years ago, and long known to the government. As such, there is no

evidence of any sudden change in underlying facts, or imminent harm to the government or public interest in these students continuing their studies or work for the brief period of time that the instant litigation will take to determine whether they lawfully can continue to do that. Therefore, the government cannot allege harm arising from a temporary restraining order or preliminary injunction ordering it to comply with the APA and the Constitution.

Further, any purported burden imposed by requiring Defendants to refrain from taking further unlawful enforcement action against Plaintiffs is, at most, *de minimis* and clearly outweighed by the substantial harm Plaintiffs will suffer as long as they continue to be subjected to the very real possibility of further unlawful enforcement action, including arrest and incarceration at an immigration jail far away from their communities. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required."); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (noting "irreparable harms imposed on anyone subject to immigration detention" including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention…" ).

Finally, a temporary restraining order is in the public interest. First and most importantly, "it would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). If a temporary restraining order is not entered, the government would effectively be granted permission to take unlawful and unconstitutional enforcement action against Plaintiffs based on their unlawful SEVIS terminations. "The public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Hernandez*, 872 F.3d at 976 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention. . ."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)

("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Therefore, the public interest overwhelmingly favors entering a temporary restraining order and preliminary injunction.

## V.  **CONCLUSION**

For all the above reasons, this Court should find that Plaintiffs warrant a temporary restraining order and a preliminary injunction preserving the status quo *before* the SEVIS terminations.

This Court should first grant a temporary restraining order to:

1. Enjoin Defendants from arresting and incarcerating Plaintiffs pending the resolution of these proceedings. 5 U.S.C. § 705;

2. Enjoin Defendants from transferring Plaintiffs outside the jurisdiction of this District pending the resolution of these proceedings. 5 U.S.C. § 705; and

3. Enjoin any legal effect that the unlawful termination of Plaintiffs SEVIS statuses or the potential unlawful revocation of their F-1 visas may have, 5 U.S.C. § 705; § 706(2)(A), (C)-(D), including:

   a. Preventing Plaintiffs from continuing their existing studies or employment authorization under CPT or OPT in valid F-1 visa status. 5 U.S.C. § 705; § 706(2)(A), (C)-(D);

   b. Preventing, based on an alleged lack of valid nonimmigrant visa status, Plaintiffs from changing status to another nonimmigrant status, or applying for adjustment of status to lawful permanent resident. 5 U.S.C. § 705; § 706(2)(A), (C)-(D);

   c. Determining that Plaintiffs are accruing unlawful presence in the United States as a result of the SEVIS terminations. 5 U.S.C. § 705; § 706(2)(A), (C)-(D); and

   d. Preventing Plaintiffs from entering the United States using their valid F-1 visa or, if necessary, applying for another F-1 visa for which they would be

eligible but for the SEVIS termination being challenged.

Furthermore, to prevent any retaliatory arrests, the Court should also issue an order requiring the parties to redact or file any information identifying Plaintiffs under seal, and an order limiting the sharing by Defendants' counsel of any information about Plaintiffs' identities or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation.

Dated: April 16, 2025                    Respectfully submitted,

                                         s/Zachary Nightingale
                                         Zachary Nightingale
                                         Attorney for Plaintiffs