1  PATRICK D. ROBBINS (CABN 152288)
   Acting United States Attorney
2  PAMELA T. JOHANN (CABN 145558)
   Chief, Civil Division
3  ELIZABETH D. KURLAN (CABN 255869)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: 415-436-7200
6       Facsimile: 415-436-6748
        elizabeth.kurlan@usdoj.gov
7
   Attorneys for Defendants
8
                    UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN JOSE DIVISION
11

12  S.Y.,                                 )  Case No. 5:25-cv-03244-NW
                                          )
13             Plaintiffs,                )  **DEFENDANTS' OPPOSITION TO**
                                          )  **PLAINTIFFS' MOTION FOR TEMPORARY**
14       v.                               )  **RESTRAINING ORDER**
                                          )
15  KRISTI NOEM, in her official capacity as )  Date:  April 25, 2025
    Secretary of the United States Department of )  Time:  9:00 a.m.
16  Homeland Security, *et al.*,          )  Location:  Courtroom 3, 5th Floor
                                          )
17             Defendants.                )
                                          )  The Honorable Noël Wise
18  _____ )

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ...............................................................................................2

        A.      The F-1 Nonimmigrant Student Status .........................................................2

        B.      SEVIS Records ..............................................................................................4

        C.      Plaintiff Doe ..................................................................................................5

III.    LEGAL STANDARD .......................................................................................6

IV.     ARGUMENT .....................................................................................................7

        A.      Plaintiffs' Requested Relief for a Judgment on the Merits is Inappropriate. .......7

        B.      Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits. ...........9

                1.      Plaintiffs' APA claims fail because there is no final agency action and
                        the agency's action was not arbitrary and capricious. .............................9

                2.      Plaintiffs' Due Process claims fail because they do not have a property
                        interest in a SEVIS record ...................................................................11

        C.      Plaintiffs Cannot Establish a Likelihood of Immediate Irreparable Harm. .........12

        D.      The Balance of Harms and the Public Interest Weighs Against Relief. ...........15

        E.      If Injunctive Relief Is Ordered the Court Should Require Plaintiffs to Post An
                Appropriate Bond .......................................................................................16

V.      CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Air Sunshine, Inc. v. Carl*,
  663 F.3d 27 (1st Cir. 2011) ................................................................................................. 11

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1980) .............................................................................................. 7

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) .............................................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 13

*Barahona-Gomez v. Reno*,
  236 F.3d 1115 (9th Cir. 2001) ............................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 13, 14

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................................. 9

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................................... 13

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ................................................................................................ 6

*Earth Island Inst. v. Carlton*,
  626 F.3d 462 (9th Cir. 2010) ................................................................................................ 6

*Fan v. Brewer*,
  No. 08-cv-3524, 2009 WL 1743824 (S.D. Tex. June 17, 2009) ........................................ 12

*Garcia v. Google*, Inc.,
  786 F.3d 733 (9th Cir. 2015) ............................................................................................ 6, 7

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013) ............................................................................................ 13

*Holistic Candlers and Consumer's Ass'n v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012) ............................................................................................. 9

*Info. Ctr. v. U.S. Dep't of Just.*,
  15 F. Supp. 3d 32 (D.D.C. 2014) ....................................................................................... 12

*Jie Fang v. Director U.S. Immigration & Customs Enforcement*,
    935 F.3d 172 (3d Cir. 2019)................................................................................................ 10

*Jimenez-Angeles v. Ashcroft*,
    291 F.3d 594 (9th Cir. 2002) .............................................................................................. 14

*Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*,
    286 F.3d 382 (6th Cir. 2002) .............................................................................................. 10

*Lackey v. Stinnie*,
    145 S. Ct. 659 (2025).............................................................................................................. 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................................................ 9

*Mayorga v. Meade*,
    No. 24-cv-22131, 2024 WL 4298815 (S.D. Fla. Sept. 26, 2024) ...................................... 14

*Mendez v. U.S. Immigration & Customs Enforcement*,
    No. 23-cv-829-TLT, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023).................................... 7

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977)............................................................................................................ 15

*Nken v. Holder*,
    556 U.S. 418 (2009).............................................................................................................. 15

*Penalbert-Rosa v. Fortuno-Burset*,
    631 F.3d 592 (1st Cir. 2011) ............................................................................................... 14

*Pom Wonderful LLC v. Pur Beverages LLC*,
    No. 13-cv-6917, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015) ........................................ 13

*Power Mobility Coal. v. Leavitt*,
    404 F. Supp. 2d 190 (D.D.C. 2005)...................................................................................... 12

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999).............................................................................................................. 14

*S.M. v. Del. Dep't of Educ.*,
    77 F. Supp. 3d 414 (D. Del. 2015)....................................................................................... 11

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ......................................................................................... 6, 7

*Silva v. Gonzales*,
    463 F.3d 68 (1st Cir. 2006)................................................................................................... 2

*Spadone v. McHugh*,
    842 F. Supp. 295 (D.D.C. 2012) ............................................................................. 12

*Stanley v. Univ. of S. California*,
    13 F.3d 1313 (9th Cir. 1994) ..................................................................................... 7

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ..................................................................................... 6

*Textron Inc. v. Comm'r of Internal Revenue*,
    336 F.3d 26 (1st Cir. 2003) ...................................................................................... 11

*U.S. Dep't of Homeland Sec.*,
    No. 22-cv-9654, 2020 WL 6826200 n.3 (C.D. Cal. Nov. 20, 2020) ..................... 12

*U.S. Philips Corp. v. KBC Bank N.V.*,
    590 F.3d 1091 (9th Cir. 2010) ................................................................................... 6

*Wallace v. Secretary. U.S. Dep't of Homeland Sec.*,
    616 Fed. App'x 958 (11th Cir. 2015) ...................................................................... 15

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ................................................................................................ 15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...................................................................................................... 6

*Wis. Gas Co v. F.E.R.C.*,
    758 F.2d 669 (D.C. Cir. 1995) ................................................................................ 12

*Yerrapareddypeddireddy v. Albence*,
    No. 20-cv-1476, 2021 WL 5324894 (D. Ariz. Nov. 16, 2021) ............................. 10

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*,
    2018 WL 5018487 (W.D. Va. Oct. 16, 2018)................................................ 9, 11, 12

**Statutes**

5 U.S.C. § 706 ............................................................................................................. 9, 10

8 U.S.C. § 1103(a) ........................................................................................................... 15

8 U.S.C. § 1184(a)(1) ......................................................................................................... 4

8 U.S.C. § 1201(i) ......................................................................................................... 4, 11

8 U.S.C. § 1226 ................................................................................................................ 14

8 U.S.C. § 1227(a)(1)(B) ................................................................................................... 4

8 U.S.C. § 1252(g) ................................................................................................................ 14

8 U.S.C. § 1372 ............................................................................................................. passim

**Rules**

Fed. R. Civ. P. 65(c) .............................................................................................................. 16

**Regulations**

8 C.F.R. § 214 ............................................................................................................... passim

8 C.F.R. § 239.3 ......................................................................................................... 3, 8, 13

22 C.F.R. § 41.122 .................................................................................................................. 4

## I.    INTRODUCTION

Plaintiffs are five international students who are enrolled at universities or employed pursuant to post-graduate training in the United States in F-1 nonimmigrant student status. Plaintiffs seek a temporary restraining order ("TRO") compelling the United States Department of Homeland Security ("DHS") to change their record back to "active" in a database known as the Student Exchange Visitor Information System ("SEVIS"). The Court should deny this request because it is procedurally and substantively improper. Congress mandated that DHS, through the United States Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program ("SEVP"), "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to foreign nationals seeking F-1 student status. *See* 8 U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established SEVIS. Consistent with its law enforcement mission as it relates to foreign students, SEVP changed Plaintiffs' records in the SEVIS database from "active" to "terminated." SEVP's ministerial action did not delete Plaintiffs from the database or terminate their F-1 nonimmigrant student status. Moreover, at this time, ICE has not charged Plaintiffs as being deportable.

Plaintiffs are unlikely to succeed on the merits of their claim. An emergency motion for a temporary restraining order may only be used to maintain the status quo; it cannot be used to obtain the ultimate relief Plaintiffs seek in this case, which is the alteration of their SEVIS record. In addition, the premise of Plaintiffs' claim is incorrect—SEVIS does not control or necessarily even reflect whether a student has lawful nonimmigrant status. Plaintiffs erroneously conflate their SEVIS record change to reflect "terminated" with their immigration status, which is their legal classification in the United States; these are two different concepts and, as stated above, Plaintiffs' F-1 statuses remain unchanged. Thus, Plaintiffs cannot rely on the regulations relating to termination of F-1 *status*, *e.g.*, 8 C.F.R. 214.1(d), since DHS's action did not change their F-1 status.[1] Plaintiffs demand that this Court overlook its jurisdictional limits, grant them extraordinary relief, and modify the records of foreign nationals. The Court should decline Plaintiffs' demands.

---

[1] Plaintiffs make no allegation that the United States Department of State, who is not a defendant in this action, has revoked their visas and Plaintiffs concede that they are not challenging any decision to revoke their F-1 visas. *See* Dkt. No. 1 (Plaintiffs' complaint) ¶ 9.

1    Similarly, Plaintiffs have not met their burden of demonstrating a likelihood of irreparable harm

2    or that a restraining order would serve the public interest. Plaintiffs' alleged harms are monetary and

3    thus reparable at law, and their alleged harms are speculative. Moreover, the balance of harms and the

4    public interest weigh in favor of the Executive's sovereign prerogative to enforce the immigration laws

5    of the United States. As a district court recently held in a case presenting similar claims, "the balance of

6    factors favors denying the motion [for TRO]" where [i]t is not currently clear that Plaintiffs have lost F-

7    1 status or that the SEVIS terminations carry independent consequences." *Deore v. Secretary of the U.S.*

8    *Dep't of Homeland Security*, No. 25-cv-11038, slip op., at *16 (E.D. Mich. Apr. 17, 2025) (ECF No.

9    20); *see also Liu v. Noem*, No. 25-cv-716, slip op., at *1 (S.D. Ind. Apr. 17, 2025) (ECF No. 24)

10   (denying motion for TRO because plaintiffs had not established that they would suffer irreparable harm

11   when plaintiffs were not in removal proceedings). Plaintiffs do not meet the standards for a TRO, let

12   alone the higher standard they would need to meet for the mandatory injunction they seek to alter the

13   status quo. Accordingly, the Court should deny Plaintiffs' request for the extraordinary remedy of a

14   TRO.

15   **II.    BACKGROUND**

16          **A.    The F-1 Nonimmigrant Student Status**

17          The Immigration and Nationality Act ("INA"), as amended, allows for the entry of a foreign

18   national who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the

19   United States temporarily and solely for the purpose of pursuing such a course of study. . . at an

20   established college, university, seminary, conservatory, academic high school, elementary school, or

21   other academic institution or in an accredited language training program in the United States." 8 U.S.C.

22   § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). As relevant here, to be admitted in F-1 status, an

23   applicant must present a Form I-20, issued by a certified school in the student's name; present

24   documentary evidence of financial support; and demonstrate he or she intends to attend the school

25   specified on the student's visa. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a nonimmigrant student

26   must "pursue a full course of study" or "engage in authorized practical training." *Id.* § 214.2(f)(5)(i).

27          Individuals admitted in F-1 status are permitted to remain in the United States for the duration of

28   status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time

1  during which an F-1 student is pursuing a full course of study at an educational institution certified by

2  SEVP for attendance by foreign students, or engaging in authorized practical training following

3  completion of studies." 8 C.F.R. § 214.2(f)(5).

4       "Optional Practical Training" or "OPT" allows eligible students to obtain temporary employment

5  that is directly related to the student's major area of study. 8 C.F.R. § 214.2(f)(10)(ii). OPT must be

6  "directly related to [a student's] major area of study" in order to qualify as authorized training. 8 C.F.R.

7  § 214.2(f)(10). OPT can occur while a foreign national is in school, during breaks, or after a student has

8  completed his or her course of study. 8 C.F.R. § 214.2(f)(10)(ii)(A)(1)–(3). While in school, a foreign

9  national's status is based on that student pursuing a degree and need not be routinely renewed. 8 C.F.R.

10  § 214.2(f)(7). Foreign nationals in an F-1 status who received a science, technology, engineering, or

11  mathematics ("STEM") degree may extend participation in the OPT program for up to an additional two

12  years following the conferral of their degree. 8 C.F.R. § 214.2(f)(10)(ii)(C). For post-degree completion

13  OPT, there are limits on how long an individual can be unemployed. In particular, a foreign national in

14  an F-1 status generally may not accrue more than ninety days of unemployment; if granted a twenty-

15  four-month STEM OPT extension, he may not accrue more than a total of 150 days of unemployment. 8

16  C.F.R. § 214.2(f)(10)(ii)(E). Periods of unemployment longer than those authorized by regulation may

17  be considered a failure to maintain status. *Id.*

18       An F-1 student admitted for the duration of status who is found to have violated his status (by,

19  for example, dropping out of school) will not be considered to be unlawfully present in the United States

20  until either (1) the day after a request for another immigration benefit is denied by U.S. Citizenship and

21  Immigration Services ("USCIS"); or (2) during removal proceedings, the day after an Immigration

22  Judge enters an order that the foreign national violated his nonimmigrant status. *See* USCIS

23  Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes

24  of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at:

25  https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited

26  Apr. 18, 2025); *see also* 8 C.F.R. § 239.3.

27       An international student may violate the terms of his or her F-1 nonimmigrant status in several

28  ways. First, if the international student violates any of the terms in the regulations governing

nonimmigrant students, he may lose his F-1 status. *See* 8 C.F.R. § 214.1(d) (addressing termination of F-1 status); 8 C.F.R. § 214.2(f) (describing the requirements of maintaining nonimmigrant student status); *see also* 8 U.S.C. § 1184(a)(1). For instance, if an "F-1 student [] is unable to complete the educational program within the time listed on Form I–20" he is "considered out of status." 8 C.F.R. § 214.2(f)(7). And, if a nonimmigrant student fails to comply with the other regulations at 8 C.F.R. § 214.2(f), he or she may become inadmissible and "will depart from the United States." 8 U.S.C. § 1184(a)(1). If a student loses nonimmigrant student status, the student or the school may seek reinstatement. *See* 8 C.F.R. § 214.2(f)(16).

Second, an "immediate" visa revocation may result in a student falling out of F-1 status. The United States Department of State may revoke an F-1 visa "at any time, in [the Secretary of State's] discretion." 8 U.S.C. § 1201(i); 22 C.F.R. § 41.122(a). A revocation may be immediate, prudential, or provisional. *See* 22 C.F.R. §§ 41.122(b), 42.82. If the Department of State immediately revokes a visa, the individual is removable under 8 U.S.C. § 1227(a)(1)(B). In contrast, a prudential revocation, or revocation upon departure, does not have a corresponding ground of removability. *See* 9 Foreign Affairs Manual ("FAM") 403.11-5(B), (U) (Prudential Revocations). Meanwhile, a "provisional revocation is subject to reversal through internal procedures established by the Department of State." 22 C.F.R. § 41.122(b).

A student who falls out of F-1 status in one of these two ways—through violation of its terms or through an immediate visa revocation—will be removable. However, as long as the student remains in F-1 status, including following a prudential revocation of a visa, the student is not removable.

## B.    SEVIS Records

To enhance the integrity of the immigration system in the wake of the September 11, 2001, terrorist attacks, Congress mandated that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). Under this

1    authority, DHS created SEVIS, "which is a web-based system" that DHS, through SEVP, "uses to

2    maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students

3    who come to the United States to attend those schools, U.S. Department of State-designated Exchange

4    Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See ICE, Student and*

5    *Exchange Visitor Information System*, found online at: https://www.ice.gov/sevis/overview (last visited

6    Apr. 18, 2025). Under 8 U.S.C. § 1372, Congress has provided DHS, through SEVP, with broad

7    authority to administer SEVIS. Inherent in that authority is SEVP's ability to maintain, update and

8    change SEVIS records as needed (*e.g.*, from "active to "terminated") to carry out the purposes of the

9    program. *See* Declaration of Andre Watson ("Watson Decl."), ¶¶ 3, 4. Notably, SEVP's termination of a

10   foreign national's record in SEVIS does not terminate that person's nonimmigrant status in the United

11   States. Watson Decl. ¶ 8. Moreover, the statute does not provide SEVP the authority to terminate a

12   foreign national's nonimmigrant status by terminating his SEVIS record. *Id.*

13        DHS updates SEVIS to reflect the status of international students within the Student and Visitor

14   Exchange Program. 8 U.S.C. § 1372; Watson Decl. ¶¶ 3–4. In addition, school officials are required to

15   update SEVIS with information about students in the program. *See* 8 C.F.R. § 214.3(g)(1).

16        **C.**    **Plaintiffs**

17        Plaintiffs are five international students who are enrolled at universities or employed pursuant to

18   post-graduate training in the United States in F-1 nonimmigrant student status.[2] Dkt. No. 1 ¶ 1. Plaintiffs

19   received notification from their school that their SEVIS record designations were changed to

20   "terminated." *Id.*

21        On April 11, 2025, Plaintiffs filed a complaint in which they bring five claims for relief. Dkt.

22   No. 1. Plaintiffs allege that Defendants' termination of their records in the SEVIS system is a final

23   agency action that violates the Administrative Procedure Act ("APA"), and that Defendants violated the

24   Due Process Clause of the Fifth Amendment by terminating their F-1 student status under the SEVIS

25   system without individualized notice and an opportunity to respond. Dkt. No. 1 ¶¶ 88–103. Plaintiffs

26   request a Court order compelling DHS to restore their "SEVIS record and status." Dkt. No. 1 at 18.

27

28        [2] Defendants are unable to verify Plaintiffs' allegations because they do not know their identity.
Watson Decl. ¶ 7.

On April 16, 2025, Plaintiffs filed a motion for TRO. Dkt. No. 10 (Plaintiffs' Motion for TRO). In the emergency motion, Plaintiffs seek the same relief as requested in their complaint as well as an order prohibiting DHS from "arresting and incarcerating" or "transferring" Plaintiffs outside the jurisdiction of this District.[3] Dkt. No. 10 at 22. On April 17, 2025, the Court granted the TRO *ex parte*, enjoining Defendants for fourteen days from arresting, incarcerating, or transferring Plaintiffs "pending the resolution of these proceedings." Dkt. No. 13.

## III.    LEGAL STANDARD

The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Either is an "extraordinary remedy" that the Court should award only upon a clear showing that the party is entitled to such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary injunctions are "never awarded as of right." *Winter*, 555 U.S. at 24.

A plaintiff seeking preliminary injunctive relief must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Garcia v. Google*, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20). Alternatively, plaintiff can show that there are "'serious questions going to the merits' and the 'balance of hardships tips sharply towards' [plaintiff], as long as the second and third *Winter* factors are [also] satisfied." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). Plaintiffs' burden is aptly described as a "heavy" one. *Earth Island Inst.*, 626 F.3d at 469.

The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). A preliminary injunction may not be used to obtain "a preliminary adjudication on the merits," but only to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix*

---

[3] Although Plaintiffs' counsel requested for Defendants to agree to refrain from arresting Plaintiffs, Defendants could not agree such a request without knowing Plaintiffs' identities.

1  *Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

2      Accordingly, where a plaintiff seeks mandatory injunctive relief—seeking to alter the status

3  quo—"courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th

4  Cir. 1994). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite*

5  and is particularly disfavored." *Stanley*, 13 F.3d at 1320 (internal quotations and alteration omitted). A

6  mandatory injunction "should not be issued unless the facts and law clearly favor the moving party."

7  *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctions "are not granted

8  unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Anderson*, 612

9  F.2d at 1115. A party seeking a mandatory injunction "must establish that the law and facts *clearly favor*

10  her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original).

11  **IV.   ARGUMENT**

12      **A.   Plaintiffs' Requested Relief for a Judgment on the Merits is Inappropriate.**

13      The Court should deny Plaintiffs' emergency motion because it seeks inappropriate relief at this

14  stage of the proceeding and because Plaintiffs cannot demonstrate their entitlement to the extraordinary

15  remedy of a temporary restraining order or preliminary injunction. The purpose of a TRO under Rule 65

16  is to preserve the status quo. *See Sierra On-Line, Inc*, 739 F.2d at 1422; *see also Lackey v. Stinnie*, 145

17  S. Ct. 659, 667 (2025) ("The purpose of a preliminary injunction is merely to preserve the relative

18  positions of the parties until a trial on the merits can be held and to balance the equities as the litigation

19  moves forward.") (quotation and citation omitted). As a matter of law, Plaintiffs are not entitled to what

20  amounts to a judgment on the merits at this preliminary stage. *See Mendez v. U.S. Immigration &*

21  *Customs Enforcement*, No. 23-cv-829-TLT, 2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (noting

22  that "judgment on the merits in the guise of preliminary relief is a highly inappropriate relief.")

23  (quotation omitted).

24      Here, Plaintiffs seek relief that is inappropriate on a motion for TRO. With respect to Plaintiffs'

25  request that the Court order DHS to reinstate their SEVIS records, Plaintiffs do not seek to maintain the

26  status quo but instead seek to alter it. Before Plaintiffs filed this suit, DHS had updated the SEVIS

27  system to note on Plaintiffs' SEVIS records "terminated." Dkt. No. 1 ¶¶ 39–77. The ultimate relief

28  Plaintiffs seek is the reinstatement of their SEVIS records to "active." *See* Dkt. No. 1 at 18. Accordingly,

1    the status quo is that Plaintiffs' SEVIS records have been terminated, and Plaintiffs' request for an

2    emergency order changing that status is inappropriate.

3         While Plaintiffs assert a challenge to SEVP's change to their SEVIS records, they also

4    improperly request relief relating to their F-1 nonimmigrant status. *See* Dkt. No. 1 at 12. Plaintiffs'

5    SEVIS records are not the same thing as their F-1 nonimmigrant statuses. *See Deore*, No. 25-cv-11038,

6    slip op., at *6 (noting that, "according to Watson's declaration, a clerical change in SEVIS does not

7    create a termination of F-1 status"). As explained in the Watson declaration, changing a data entry field

8    in a SEVIS record to "terminated" (as opposed to initial, active, inactive, or completed) neither deletes

9    the SEVIS record nor terminates the foreign national's F-1 nonimmigrant status. Watson Decl. ¶ 8.

10   SEVIS is a database to monitor and verify certain information about F, M, and J nonimmigrants

11   administered by SEVP. *Id.* ¶ 4. As ICE confirmed in a 2018 letter in response to a Congressional

12   inquiry:

13             SEVIS records serve as an indicator of a possible immigration status
              violation. SEVIS record terminations and cancellations *are data entry*
14            *actions* in SEVIS that *raise a flag indicating that an individual's status*
              *requires further investigation by the agency*. An individual's SEVIS record
15            can be terminated for a number of reasons, not all of which are negative.

16   Ex. A (ICE letter responding to questions from Senator Chuck Grassley dated June 1, 2018) at 9

17   (emphasis added).

18        The applicable statute, 8 U.S.C. § 1372, does not provide SEVP with the authority to terminate

19   nonimmigrant status by changing a SEVIS record. Watson Decl. ¶ 8. Indeed, F-1 nonimmigrant status is

20   held for duration of status (or "D/S") and can only be determined by an immigration judge or USCIS to

21   have ended in very specific set of circumstances. *See supra* Part II.A; USCIS Memorandum on May 6,

22   2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section

23   212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at:

24   https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited

25   Apr. 18, 2025); 8 C.F.R. § 239.3. Here, SEVP has not claimed that it terminated Plaintiffs'

26   nonimmigrant statuses. Watson Decl. ¶ 8.

27        Moreover, as Plaintiffs concede, the Department of State's prudential revocation of a visa alone

28   does not automatically revoke F-1 status. *See* Dkt. No. 7 at 14; *see also Deore*, No. 25-cv-11038, slip

op., at *7 (noting that prudential visa revocation "does not automatically revoke "F-1 status"). This is because a visa, which is a travel document that allows an individual to enter the United States, is not the same as immigration status, which is an individual's legal classification in the United States. Therefore, Plaintiffs have not presented a valid case or controversy before the Court regarding his nonimmigrant status. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 (1992).

**B.    Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits.**

**1.    Plaintiffs' APA claims fail because there is no final agency action and the agency's action was not arbitrary and capricious.**

Plaintiffs fail to assert a viable claim under the APA because SEVP's change to Plaintiffs' SEVIS records is not a final agency action. A final agency action is required for APA review. 5 U.S.C. § 706. An action is "final" when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). A challenged action fails the first prong if it is "of a merely tentative or interlocutory nature" and does not express an agency's "unequivocal position." *Holistic Candlers and Consumer's Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (citations omitted). A non-final action contemplates further administrative consideration or modification prior to the agency's adjudication of rights or imposition of obligations. *See id.* at 945.

SEVP's change to Plaintiffs' SEVIS records fails to meet both factors of the final agency action test. First, the change does not mark the consummation of any decision-making process. SEVIS records are "an electronic means to monitor and verify" certain information about a student nonimmigrant. *See* Watson Decl. ¶ 4; 8 U.S.C. § 1372(c). And changing a SEVIS record to "terminated" does not terminate a foreign national's nonimmigrant status in the United States. Watson Decl. ¶ 8. Thus, the SEVIS record—indicating initial, active, inactive, completed or terminated—does not reflect the consummation of any agency decision-making process regarding a student's nonimmigrant status. *See* Ex. A.

Second, legal consequences do not flow from the mere changing of a SEVIS record to terminated. As indicated, it does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa. Watson Decl. ¶ 8. Rather, it is a record keeping action conducted under DHS's authority to collect information and maintain records under 8 U.S.C. § 1372. *See Yunsong*

*Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence*, No. 20-cv-1476, 2021 WL 5324894, at *8 (D. Ariz. Nov. 16, 2021) (same).

Plaintiffs rely on *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 182 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action under the APA, but that case is inapposite. In *Jie Fang*, the district court dismissed the plaintiffs' APA claims after finding that DHS's revocation of their nonimmigrant status was not final under the APA and that the suit was not ripe because the students could challenge their revocation in immigration removal proceedings. 935 F.3d at 177–78. On appeal, the Third Circuit reversed on both points and remanded for further proceedings because it concluded that the regulation providing for reinstatement of F-1 nonimmigrant status (8 C.F.R. § 214.2(f)(16)) was not mandatory and that the regulatory appeal procedure was not reviewable in immigration proceedings. *Jie Fang*, 935 F.3d at 177–78. The reasoning in *Jie Fang* is inapplicable here: the issue in *Jie Fang* was not the termination of a SEVIS record; it was the termination of lawful nonimmigrant status, which led to the agency placing the students in immigration removal proceedings. *See Jie Fang*, 935 F.3d at 178–79. Thus, *Jie Fang* does not support Plaintiffs' claim, and they is not challenging a final agency action.

If an action is reviewable under the APA, a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under the arbitrary or capricious standard, the party challenging the agency's action must show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th Cir. 2002) (quotations omitted).

Here, DHS's termination of Plaintiffs' SEVIS records was not arbitrary or capricious. SEVIS records may be terminated for numerous reasons by DHS and by a university. *See supra* Part II.B. It is within DHS's statutory discretion to decide that Plaintiffs' SEVIS records warranted the notation of "terminated." *See* 8 U.S.C. § 1372. Accordingly, Plaintiffs could not succeed on their APA claim based on the evidence in the record at this stage, even if the termination of their SEVIS records were

1  reviewable under the APA.

2       Plaintiffs allege that DHS lacks the authority to change a SEVIS record under 8 C.F.R.

3  § 214.1(d). Dkt. No. 7 at 13. Plaintiffs are incorrect. Section 214.1(d) relates to the termination of a

4  foreign national's nonimmigrant status—not his SEVIS record. *See* 8 C.F.R. § 214.1(d) ("the

5  nonimmigrant status of an alien shall be terminated by…"). And as SEVP has indicated, it "has never

6  claimed that it had terminated Plaintiffs' nonimmigrant status." Watson Decl. ¶ 8. Congress tasked DHS

7  with the broad authority to "develop and conduct a program" to record information about nonimmigrant

8  students in an electronic database. 8 U.S.C. § 1372(a)(1). DHS can update, change or modify the records

9  for that program as part of its congressionally mandated authority to "conduct" the SEVIS program. *Id.*[4]

10          **2.    Plaintiffs' Due Process claims fail because they do not have a property**
               **interest in a SEVIS record.**

11

12       Plaintiffs have no likelihood of success on the merits of their due process claim because courts

13  have held that there is no property interest in a SEVIS record. To establish a procedural due process

14  claim under the Fifth Amendment, "a plaintiff must (1) 'identify a protected liberty or property interest,'

15  and (2) 'allege that the defendants . . . deprived [him] of that interest without constitutionally adequate

16  process.'" *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011) (quotation omitted). Plaintiff has

17  not, and cannot, provide any authority to establish a constitutionally protected interest in a SEVIS

18  record. This is because the opposite is true—courts have held that no such interest exists. *See*, *e.g.*, *Zhao*,

19  2018 WL 5018487, at *6 (holding that plaintiff did not have a property interest in his SEVIS record that

20  would implicate due process).[5] Here, as in *Zhao*, Plaintiffs do not have a constitutionally protected

21

22      [4] Moreover, Section 214.1(d) provides three mandatory scenarios in which nonimmigrant status
"shall" be terminated without review. *See* 8 C.F.R. § 214.1(d). It does not, however, suggest that

23  nonimmigrant status *cannot* be terminated for other reasons. *See id.* The plain text of the regulation
controls. *Textron Inc. v. Comm'r of Internal Revenue*, 336 F.3d 26, 31 (1st Cir. 2003). Part 214.1(d)

24  provides reasons for terminating nonimmigrant status in addition to reasons provided elsewhere in the
applicable statutory provisions and regulations. *See*, *e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f).

25      [5] *See also S.M. v. Del. Dep't of Educ.*, 77 F. Supp. 3d 414, 419 (D. Del. 2015) (holding that there
is no protected property interest for students wishing to continue attending their same school); *Fan v.*

26  *Brewer*, No. 08-cv-3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009) (updating student's SEVIS
record to reflect changed academic status did not violate any constitutional right); *Doe 1 v. U.S. Dep't of*

27  *Homeland Sec.*, No. 22-cv-9654, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), *aff'd sub nom.*
*Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849 (9th Cir. 2021) ("Although

28  Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally
unlikely that one exists.").

property interest in their SEVIS records. SEVIS is an administrative processing tool that does not affect their lawful nonimmigrant status. *See Zhao*, 2018 WL 5018487, at *4–5. Accordingly, Plaintiffs fail to demonstrate a likelihood of success on the merits of their due process claim.

### C.    Plaintiffs Cannot Establish a Likelihood of Immediate Irreparable Harm.

"[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quotation omitted). In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (quotation omitted). The movant must "substantiate the claim that irreparable injury is likely to occur" and "provide proof . . . indicating that the harm is certain to occur in the near future." *Wis. Gas Co v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1995). That is because "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

Here, Plaintiffs have not demonstrated a likely irreparable injury. See *Liu*, No. 25-cv-716, slip op., at *9 (concluding that "Plaintiffs have not demonstrated irreparable harm to warrant the extraordinary exercise of judicial power required" to issue a TRO based on the SEVIS record alteration). First, Plaintiffs' claim of loss of current and future employment does not constitute irreparable injury. "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 295, 301 (D.D.C. 2012) (citations omitted). Notably, a foundational requirement for eligibility for F-1 student status is demonstration of the ability to independently cover all costs while present in the United States. *See* 8 C.F.R. § 214.2(f)(1)(i)(B).

Additionally, Plaintiffs' claim relating to their future employment is speculative because a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," or on "speculation about the decisions of independent actors," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 (2013). As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in

crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797

F.3d 11, 23 (D.C. Cir. 2015); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239,

1250 (9th Cir. 2013) (while injunctive relief may be ordered to prevent reputational harm, a finding of

reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than

evidence"); *Pom Wonderful LLC v. Pur Beverages LLC*, No. 13-cv-6917, 2015 WL 10433693, at *11

(C.D. Cal. Aug. 6, 2015) (unsubstantiated statements were "not *evidence* that [plaintiff's] reputation and

goodwill are likely to be harmed absent injunctive relief") (emphasis in original)).

Second, Plaintiffs' claim that they will accrue unlawful status and be unable to change to another

nonimmigrant status does not constitute an irreparable injury because they are still in F-1 nonimmigrant

statuses. *See* Watson Decl. ¶ 8. It also is an incorrect statement because F-1 students admitted for the

duration of status (or "D/S") begin to accrue unlawful presence only after USCIS or an Immigration

Judge has taken administrative action against them. *See supra* Part II.A. USCIS Memorandum on

May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section

212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at:

https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited

Apr. 18, 2025); *see also* 8 C.F.R. § 239.3.

Finally, Plaintiffs argue that they face a risk of immediate detention or removal from the United

States. However, at this time, DHS has not charged any Plaintiffs as being removable such that they will

be placed in detention. Nor have Plaintiffs pled any facts that would lead this Court to believe that

Defendants imminently intend to detain them or initiate removal proceedings against them at this time,

let alone without due process of law. Plaintiffs' claims amount to little more than "'legal conclusion[s]

couched as . . . factual allegation[s],'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and are "so threadbare or speculative that they fail to

cross 'the line between the conclusory and the factual.'" *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d

592, 595 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 557 n.5).

Further, this Court has no jurisdiction to review DHS's decision to commence removal

proceedings. The INA divests this Court of jurisdiction over discretionary decisions concerning DHS's

decision to initiate removal proceedings. 8 U.S.C. § 1252(g). Moreover, the INA explicitly bars judicial

review of the discretionary decision over whether or not to detain a foreign national that is placed in removal proceedings. 8 U.S.C. § 1226. Therefore, this Court lacks authority to provide Plaintiff with the relief he requests based on his speculative assertions.

At the threshold, Section 1252(g) applies to "three discrete actions that the [Secretary of Homeland Security] may take: her 'decision or action' to 'commence removal proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). The Supreme Court determined that "Section 1252(g) was directed against . . . attempts to impose judicial constraints upon prosecutorial discretion." *Reno*, 525 U.S. at 485 n.9. This includes the Executive's "discretion to abandon the endeavor" without judicial interference. *Id.* at 483–84; *see also Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001). Consequently, Section 1252(g) prohibits district courts from hearing challenges to decisions and actions about whether, when, and where to commence removal proceedings. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 598–99 (9th Cir. 2002). Accordingly, any request by Plaintiffs that the Court prohibit Defendants from initiating removal proceedings against them fails because it impedes upon the Secretary of Homeland Security's discretion to commence removal proceedings.

Moreover, 8 U.S.C. § 1226(e) provides that that: "[t]he [Secretary of Homeland Security's] discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the [Secretary] under this section regarding the detention of any alien or the revocation or denial of bond or parole." *See*, *e.g.*, *Mayorga v. Meade*, No. 24-cv-22131, 2024 WL 4298815, at *7 (S.D. Fla. Sept. 26, 2024). Similarly, Section 1252(g) independently bars relief. If Defendants decide at some point to charge any Plaintiffs as deportable and thereafter detain them, such an action would arise "from the decision [and] action" to "commence proceedings." 8 U.S.C. § 1252(g). This includes reviewing the method by which the Secretary of Homeland Security chooses to commence removal proceedings. *See*, *e.g.*, *Wallace v. Secretary. U.S. Dep't of Homeland Sec.*, 616 Fed. App'x 958, 961 (11th Cir. 2015) (affirming the district court's holding that it lacked subject matter jurisdiction over "challenges to the government's initiation of removal proceedings."). Accordingly, this Court has no jurisdiction to review the discretionary decision to detain a noncitizen who has been charged as removable (which notably, Plaintiffs have not been charged as removable). In sum, Plaintiffs

1    have failed to establish any irreparable harm.

2        **D.    The Balance of Harms and the Public Interest Weighs Against Relief.**

3        Granting a preliminary injunction would be contrary to the public interest. The balance of harms

4    and the public interest elements of the injunctive relief test merge when the government is the opposing

5    party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public

6    consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*,

7    456 U.S. 305, 312-13 (1982). Entry of a preliminary injunction would be contrary to the public interest

8    here.

9        Here, Plaintiffs have not met their burden of establishing that the balance of equities or the

10   public interest weigh in his favor. Congress has instilled in the Secretary of Homeland Security

11   significant authority to administer and enforce the United States immigration laws, including those

12   governing the conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). And

13   directly applicable here, Congress has mandated that DHS develop and administer a "[p]rogram to

14   collect information relating to nonimmigrant foreign students." *See* 8 U.S.C. § 1372. Any order that

15   enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted by the duly

16   elected representatives of the people constitutes an irreparable injury that weighs heavily against the

17   entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

18   Granting Plaintiffs with the extraordinary relief that they seek will effectively undermine DHS's

19   authority to enforce the provisions of the INA relating to the agency's ability to update and maintain the

20   information in SEVIS and, as such, to change SEVIS record status to "terminated" as needed, in order to

21   carry out the purposes of the program. The public interest would not be served by the Court enjoining

22   the authority of the agency to maintain this database.

23       **E.    If Injunctive Relief Is Ordered the Court Should Require Plaintiffs to Post an
         Appropriate Bond.**

24

25       Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining

26   order only if the movant gives security in an amount that the court considers proper to pay the costs and

27   damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.

28   65(c). If the Court grants a TRO or preliminary injunctive relief, Defendants respectfully request that the

DEFENDANTS' OPPOSITION TO TRO
5:25-cv-0244 NW                          15

1    Court require Plaintiffs to post security during the pendency of the Court's Order in an amount that the

2    Court considers appropriate under Rule 65(c).

3    **V.        CONCLUSION**

4              For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs'

5    motion for a TRO.

6

7    DATED:  April 21, 2025                              Respectfully submitted,

8                                                        PATRICK D. ROBBINS
                                                         Acting United States Attorney
9

10                                                       *s/ Elizabeth D. Kurlan*
                                                         ELIZABETH D. KURLAN
11                                                       Assistant United States Attorney

12                                                       *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28